**THE KICK LAW FIRM, APC**
Taras Kick (State Bar No. 143379)
taras@kicklawfirm.com
Daniel J. Bass (State Bar No. 287466)
daniel@kicklawfirm.com
Roy K. Suh (State Bar No. 283988)
Roy@kicklawfirm.com
815 Moraga Drive
Los Angeles, California 90049
Telephone:   (310) 395-2988
Facsimile:   (310) 395-2088

Attorneys for Plaintiff Clayton Salter,
individually and on behalf of all others
similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON SALTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUALITY CARRIERS INC., an Illinois Corporation; QUALITY DISTRIBUTION INC., a Florida Corporation; and DOES 1 through 100, inclusive.<br><br>Defendants. | CASE NO.: 2:20-cv-00479-JFW-JPR<br><br>Assigned to the Honorable John F. Walter<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT**<br><br>Hearing Date:      March 9, 2020<br>Time:                    1:30 p.m.<br>Courtroom:         7A<br>Judge:                  John F. Walter |

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

MEMORANDUM OF POINTS AND
AUTHORITIES

1

## **Table of Authorities**

2

## **Cases**

3

*Abrego v. The Dow Chemical Co.,*
4
   443 F.3d 676 (9th Cir. 2006) ............................................................... 12

5
*Amoche v. Guarantee Trust Life Insurance Co.,*
6
   556 F.3d 41 (1st Cir. 2009) ................................................................. 20

7
*Brill v. Countrywide Home Loans, Inc.,*
   427 F.3d 446 (7th Cir, 2005) .............................................................. 20

8
*Carvalho v. Equifax Info. Servs., LLC,*
9
   629 F.3d 876 (9th Cir. 2010) ........................................................... 9, 10

10
*Dart Cherokee Basin Operating System Co., LLC v. Owens,*
11
   574 U.S. 81, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014) ............................... 12, 13

12
*Dobbs v. Wood Grp. PSN, Inc.,*
13
   201 F. Supp. 3d 1184 (E.D. Cal. 2016) ................................................. 15

14
*Duberry v. J. Crew Group, Inc.,*
   2015 U.S. Dist. LEXIS 99171, 2015 WL 4575018 (C.D. Cal. July 28, 2015) . 15

15
*Fritsch v. Swift Transportation Company of Arizona, LLC,*
16
   899 F.3d 785 (9th Cir. 2018) ........................................................... 17, 18

17
*Gonzalez v. Hub International Midwest Limited,*
18
   No. ED CV 19-557 PA (ASx), 2019 U.S. Dist. LEXIS 79672, 2019 WL
   2076378 (C.D. Cal. May 10, 2019) ...................................................... 17
19

20
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ............................................................ 18

21
*Harris v. Bankers Life & Cas. Co.,*
22
   425 F.3d 689 (9th Cir. 2005) ............................................................ 8-9

23
*Ibarra v. Manheim Investments, Inc.,*
24
   775 F.3d 1193 (9th Cir. 2015) ...................................................... 11, 12, 13, 14

25
*Ingram v. Oroudjian,*
   647 F.3d 925 (9th Cir. 2011) ........................................................... 17, 18
26

27
*Kenny v. Wal-Mart Stores, Inc.,*
   881 F.3d 786 (9th Cir. 2013) ............................................................. 11

28

  //

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

2

MEMORANDUM OF POINTS AND
AUTHORITIES

*Kuxhausen v. BMW Fin. Servs. NA, LLC,*
     707 F.3d 1136 (9th Cir. 2013) ........................................................... 10

*Leon v. Gordon Trucking, Inc.,*
     76 F. Supp. 3d 1055, 2014 WL 7447701 (C.D. Cal. 2014) ............... 13

*Marentes v. Key Energy Servs. Cal.,*
     Inc., 2015 U.S. Dist. LEXIS 21377, 2015 WL 756516 (E.D. Cal. 2015) ..... 13-14

*McNulty v. CRST Van Expedited, Inc.,*
     2015 U.S. Dist. LEXIS 4569 (C.D. Cal. 2015) ................................. 11

*Murphy Bros.*, Inc. *v. Michael Pipe Stringing, Inc.,*
     526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999) ............... 10

*Pereira v. Gate Gourmet, Inc.,*
     Not Reported in F.Supp.2d 2009 WL 1212802 (C.D.Cal. April 30, 2009) ....... 19

*Reyna v. Fore Golf Management, Inc.,*
     2015 U.S. Dist. LEXIS 26015, 2015 WL 881390 (C.D. Cal. 2015)  ............... 14

*Rodriguez v. AT & T Mobility Servs. LLC,*
     728 F.3d 975 (9th Cir. 2013) ........................................................ 12

*Romero v. Producers Dairy Foods, Inc.,*
     No. 1:05-cv-0484-DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14,
     2007)................................................................................................ 18

*Rosales v. Staples Contact & Commercial, Inc.,*
     2015 U.S. Dist. LEXIS 97782, 2015 WL 4537577, *4 (C.D. Cal. 2015) ... 11, 12

*Roth v. CHA Hollywood Med. Ctr., L.P.,*
     720 F.3d 1121 (9th Cir. 2013) ...................................................... 11

*Roth v. Comerica Bank,*
     799 F.Supp.2d 1107 (C.D.Cal. 2010)  ....................................... 19, 20

*Salmonson v. Euromarket Designs, Inc., et al.,*
     Case No. CV 11-2446 PSG (PLAx), 2011 U.S. Dist. LEXIS 61538 (C.D.
     Cal.2011). …………………………………………………………………...9

*Serrano v. Pac. Coast Feather Cushion Co.,*
     No. CV 17-4414-DMG (JEMx), 2017 U.S. Dist. LEXIS 138153, 2017 WL
     3720630 (C.D. Cal. Aug. 28, 2017) ............................................... 17

*Standard Fire Ins. Co. v. Knowles,*
     568 U.S. 588, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013) ............... 12

The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, California
90049

3

MEMORANDUM OF POINTS AND
AUTHORITIES

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................... 18

*Sullivan v. Oracle Corp.*
  51 Cal.4th 1191 (2011) ................................................................. 15, 16

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
*Workers Int'l Union, AFL—CIO, CLC v. Shell Oil Co.*,
  602 F.3d 1087 (9th Cir. 2010) .......................................................... 12

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482, 2010 U.S. Dist. LEXIS 21159 (E.D.Cal. March 8, 2010) ..... 18

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001) ............................................................. 10

*Yarian v. All Freight Carriers Inc.*,
  2020 CV 19-9172 DSF (Ex), 2020 U.S. Dist. LEXIS 17141 (C.D.Cal. January
  31, 2020) ........................................................................................ 16

*Zackaria v. Wal-Mart Stores, Inc.*,
  2011 WL 6065169 (C.D. Cal. Dec. 5, 2011) ....................................... 19


**Statutes**

28 U.S.C. § 1332 ....................................................................... 6, 8, 9, 12

28 U.S.C. § 1446 ....................................................................... 7, 8, 9, 10

28 U.S.C. § 1453 ................................................................................. 7, 8

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

4

MEMORANDUM OF POINTS AND
AUTHORITIES

## Table of Contents

I.     INTRODUCTION ................................................................................6

II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ..............6

III.   DEFENDANTS' REMOVAL WAS UNTIMELY.................................7

IV.    DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW
       THE PROPRIETY OF JURISDICTION UNDER CAFA ...........................12

V.     DEFENDANTS FAILED TO SHOW THAT THE PUTATIVE CLASS'S
       AGGREGATE CLAIMS EXCEED $5,000,000 ...........................................14

       a.    The California Labor Code Does Not Authorize Non-Residents to
             Recover for Work Completed Outside of California...........................15

       b.    Defendants Failed to Establish a Correct Calculation of Attorney's
             Fees in the Amount in Controversy ....................................................16

       c.    Defendants' Overinclusive Calculations Are Insufficient to Show
             Amount in Controversy......................................................................18

VI.    CONCLUSION ...........................................................................21

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

5

MEMORANDUM OF POINTS AND
AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

In this case, Plaintiff Clayton Salter ("Plaintiff") asserts claims under the California Labor Code on behalf of a class of persons who are current and former Drivers in California of the Defendants Quality Carriers Inc. and Quality Distribution Inc. ("Defendants"). Defendants have failed to proffer evidence showing the jurisdictional requirements for removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), upon which Defendants' January 16, 2020 notice of removal rests *exclusively*, have been met in this case. (*See* Dkt. No. 1, "Removal Notice"). Even if Defendants had bothered to introduce facts within Defendants' subjective knowledge via affidavit or declaration – *which they did not* – the insufficient facts Defendants offer, nevertheless, fail to establish that the Plaintiff's proposed class in aggregate alleges the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. More importantly, Defendants failed to remove this matter within the required 30-day period, make no argument that a further triggering document made them aware of such jurisdiction and directly state that no such pleading or writing has occurred. As such, Defendants' removal paperwork is either untimely or improper and the matter must be remanded to the Los Angeles Superior Court.

**II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

On October 3, 2019 Plaintiff filed this action in Los Angeles Superior Court "on behalf of… all current and former drivers… who performed work for DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment," asserting claims for: (1) failure to provide meal periods; (2) failure to provide required rest breaks; (3) failure to pay overtime wages; (4) failure to pay minimum wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7)

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

6

MEMORANDUM OF POINTS AND
AUTHORITIES

failure to provide accurate itemized wage statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) unlawful deductions from wages; and (10) unfair and unlawful business practices (Dckt. 9-1 ("Complaint")).

On October 16, 2019 and October 18, 2019 Defendants Quality Carriers Inc. and Quality Distribution Inc. were served. (See Declaration of Daniel Bass in Support of Plaintiff's Motion to Remand ("Bass Decl.") ¶¶ 3-4, Exhs. A-B; see also Dckt. 9-7, "Notice of Service of Process on Quality Distribution"). On the November 12, 2019, Defendants filed a Notice of Appearance of Counsel in the Los Angeles Superior Court. (Dckt. 9-8) On November 26, 2019 Parties met and conferred for the Los Angeles Superior Court Initial Status Conference to discuss topics which included class size, claims and potential early crucial motions. (Bass Decl. ¶ 5; see also Dckt. 9-6, "Court Order Regarding Newly Filed Class Action"). Not until January 16, 2020 did the Defendants remove this action to federal court, asserting jurisdiction under the Class Action Fairness Act ("CAFA") (Dckt. 1).

On January 23, 2020, Plaintiff's Counsel requested the Parties meet an confer pursuant to local Rule 7-3 regarding Plaintiff's intention to file a motion to remand. (See Dckt. 16, "Joint Statement Regarding the Parties Local Rule 7-3 Conference"). Parties met and conferred on February 3, 2020, the first available date, for Defendants' counsel. (*Id*.) The Parties exchanged additional e-mails on February 3, 2020 and February 6, 2020, as well as held an additional phone call on February 5, 2020, regarding the issue of remand, however Parties were still unable to come to an agreement. (*Id*.)

## III.  DEFENDANTS' REMOVAL WAS UNTIMELY

Section 1446 of Title 28 of the United States Code sets forth the procedure for the removal of a civil action from state to federal court. *See* 28 U.S.C. § 1446; *see also* 28 U.S.C. § 1453 (indicating that timeliness of removal under CAFA is governed by 28 U.S.C. § 1446). The statute provides:

The Kick Law Firm, APC
815 Moraga Drive
Los Angeles, California
90049

7

MEMORANDUM OF POINTS AND
AUTHORITIES

1
2
3
4

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

5
6
7

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

8    28 U.S.C. § 1446 (b).  The statute plainly creates two periods during which a case

9    can be removed: first, a thirty day window triggered by receipt of the initial

10   pleading or summons "if the case started by the initial pleading is removable *on its*

11   *face*," *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)

12   (emphasis added), and second, a thirty day window triggered by receipt of "a copy

13   of an amended pleading, motion, order or other paper" from which removability

14   may be first ascertained, *if* the initial pleading does not indicate, on its face, that the

15   case is removable, 28 U.S.C. § 1446(b).

16       A case can be remanded to state court if the notice of removal is untimely.

17   *See* 28 U.S.C. §§ 1446(c), 1453(c)(1).  In this case removal was untimely and

18   improper, because Defendants were undoubtedly aware of the basis for CAFA

19   jurisdiction at the outset of the matter, including at the time of the Parties met and

20   conferred on November 26, 2019.  Indeed, Defendants' own notice of removal

21   states that "Plaintiff's complaint places more than $5,000,000 jurisdictional

22   threshold under 28 U.S.C. § 1332(d) in controversy." (Dckt. 1 at 3:27-4-1).

23   However, Defendants waited not only 30 days from when they were served on

24   October 16th and 18th, but over 90 days to remove that matter on January 16, 2020.

25   Assuming, *arguendo*, that Defendants were not aware of the initial grounds for

26   removal from the initial complaint, the fact that there are two windows for removal

27   under § 1446(b) is well-established in the Ninth Circuit. *See Harris*, 425 F.3d at

28   692 ("The statute provides two thirty-day windows during which a case may be

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

8

MEMORANDUM OF POINTS AND
AUTHORITIES

removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper from which it may first be ascertained that the case is one which is or has become removable if the case stated by the initial pleading is not removable." (quotations omitted)). In *Harris*, the Ninth Circuit held that "the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal." *Id. at 694* (quoting 28 U.S.C. § 1446(b)). Moreover, the Ninth Circuit specifically held that "[i]f no ground for removal is evident in [an initial] pleading, the case is '*not removable*' at that stage." *Id.* (emphasis added).

If this matter was not removable at the time of the initial pleading it is not removable as the second opportunity to remove only occurs "*after* the defendant *receives* 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document [received] that removal is proper." *Harris*, 425 F.3d at 692 (quoting 28 U.S.C. § 1446(b))(emphasis added); see also *Salmonson v. Euromarket Designs, Inc., et al.*, Case No. CV 11-2446 PSG (PLAx), 2011 U.S. Dist. LEXIS 61538 (C.D. Cal. 2011). When removability is not apparent from the face of the complaint, the case is not "rendered removable" until *after* defendants *receive* "an amended pleading, motion, order or other paper" containing the necessary basis for removal. *Harris*, 425 F.3d at 692; *see also Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 885-87 (9th Cir. 2010) (explaining that the second window for removal starts, or is "triggered" by, "*receipt*" of an "other paper" as the term is used in § 1446(b)).

Here, Defendants admit in their removal paperwork that the second thirty-day removal period has not been triggered by "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). In fact, they directly state that "Defendants have not received a post-complaint pleading or other paper that

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

9

MEMORANDUM OF POINTS AND
AUTHORITIES

affirmatively and unambiguously specified a damages amount sufficient to satisfy the federal jurisdictional minimums." (Dckt. 1 at p. 6).  The fact that the Ninth Circuit held that certain cases are "not removable" until "after a defendant receives" something from Plaintiff establishing removability flatly contradicts Defendants' stated position that they can remove at anytime because the was not an unambiguous statement of damages.  For a thirty-day "deadline" to run, it must first start. *See Carvalho, 629 F.3d at 886* (holding that a certain document did not start, or "trigger" § 1446(b)'s second thirty-day removal period); *see also Murphy Bros., Inc. v. Michael Pipe Stringing, Inc.*, 526 U.S. 344, 355, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999) (analyzing when § 1446(b)'s removal "clock" starts and ends).

The cases Defendants cite in support of their position that they may remove at any time, without a further pleading or document are factually distinguishable from the instant case. For example, Defendants rely on *Kuxhausen v. BMW Fin. Servs. NA, LLC*, 707 F.3d 1136, 1139-40 (9th Cir. 2013), in support of Defendants' contention that the deadline to remove had not begun to run because Complaint did not make it apparent that the case was removable. *See Dckt 1. However, in *Kuxhausen*, a class action involving allegations that an automobile dealership had backdated contracts, the Ninth Circuit held that while the defendant would have been obligated to perform basic multiplication based on the number of class members and the cost of the at-issue contracts to determine whether the five million dollar class action jurisdictional requirement was met, the district court had erred in assuming that all of the vehicle contracts cost the same as the plaintiff's contract. *Kuxhausen, 707 F.3d at 1140-41*. *Kuxhausen* directly states that Defendants are not relieved from making initial calculations, holding only that the Defendants "need not make extrapolations or engage in guesswork;" but clearly stating that "the statute 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.'" *Id. at 1140* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001)).

1   To the extent Defendants are arguing that it is their own investigation

2   pursuant to *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2013) that

3   made them aware that the amount in controversy was met they have not provided

4   any information as to how or when such an investigation took place. While a

5   defendant may "remove outside the two thirty-day periods on the basis of its own

6   information," *Roth v. CHA Hollywood Med. Ctr., L.P.,* 720 F.3d 1121, 1125 (9th

7   Cir. 2013), the information must — when questioned as Plaintiff is doing here —

8   constitute "summary-judgment-type evidence," *Ibarra v. Manheim Investments,*

9   *Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015), that is sufficient "to persuade the court

10  that the estimate of damages in controversy is a reasonable one," *id.,* or otherwise

11  makes the case removable.  Here, as further noted in the sections below, the

12  contentions put forth by Defendants lack supportive evidence and are insufficient to

13  make the case removable. *See, e.g., McNulty v. CRST Van Expedited, Inc.*, 2015

14  U.S. Dist. LEXIS 4569, *6 (C.D. Cal. 2015) ("[T]he Ninth Circuit has not permitted

15  removal outside of [the 30-day] periods based upon speculation and guesswork by a

16  removing party. In contrast to the facts of *Roth* and *Rea*, Defendants do not ground

17  their removal in facts firmly established through their own investigation or a change

18  in the governing law. Instead, Defendants essentially speculate[.]"); *Rosales v.*

19  *Staples Contact & Commercial, Inc.*, 2015 U.S. Dist. LEXIS 97782, 2015 WL

20  4537577, *4 (C.D. Cal. 2015) ("Defendant's assumption of a 100 percent violation

21  rate is not the `summary-judgment-type evidence' needed to demonstrate that the

22  amount in controversy exceeds $5,000,000 by a preponderance of the evidence.").

23  Defendants have not even stated the basis of jurisdiction is based on their

24  own investigation, stating only that "Plaintiff's complaint places more than the

25  $5,000,000 jurisdictional threshold… in controversy" (Dckt. 1 at 3:27-4:1) but also

26  claiming, without supportive declarations or evidence that "Quality Carriers'

27  records indicate that, during the relevant period, putative class members authorized

28  Quality Carriers to deduct in excess of $5,000,000 for fuel, insurance, maintenance,

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

11

MEMORANDUM OF POINTS AND
AUTHORITIES

repair, and tax expense." (*Id*. at 4:6-9).

As such, Defendants removal was either untimely, improper or both as it was filed about 90 days after service and has no basis in fact to create jurisdiction.

## IV.   DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW THE PROPRIETY OF JURISDICTION UNDER CAFA

"CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL—CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010); *see Ibarra*, 775 F.3d at 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements"). CAFA vests district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action consisting of more than 100 members "in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating System Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 685 (9th Cir. 2006). "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT & T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. 2013). "When plaintiffs favor state court and have prepared a

complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5,000,000, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5,000,000, to satisfy other requirements under CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

In *Dart Cherokee, 574 U.S. 81, 135 S.Ct. 547, 190 L. Ed. 2d 495*, the Supreme Court did not mandate that a plaintiff seeking to remand an action must submit evidence challenging the amount in controversy. Instead, the Supreme Court in *Dart Cherokee*, along with the Ninth Circuit in *Ibarra*, only required a plaintiff to come forward with contrary evidence when the removing defendant has produced evidence to meet its initial burden. *See, e.g., Ibarra, 775 F.3d at 1197* (holding that a "defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one"); *see also id.* at 1199 ("[Defendant], as the removing [party], has the burden of proof on this"). Once the defendant has provided evidence, then the burden shifts to the plaintiff, but plaintiff need not do so in order to prevail on his or her motion for remand. *See, e.g., Leon v. Gordon Trucking, Inc., 76 F. Supp. 3d 1055, 2014 WL 7447701, *10, fn. 40 (C.D. Cal. 2014)* ("Here, [plaintiff] filed a motion to remand; thus *Dart Cherokee* makes clear that it was [defendant's] burden to come forth with evidence establishing the amount in controversy. As noted, it has failed to do so"); *Marentes v. Key Energy Servs. Cal., Inc., 2015 U.S. Dist. LEXIS 21377, 2015 WL 756516, *3 (E.D. Cal. 2015)* (granting motion to remand based on plaintiff's challenge to defendant's calculations as "rely[ing] solely on speculation and

THE KICK LAW FIRM, APC
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA
90049

13

MEMORANDUM OF POINTS AND
AUTHORITIES

unsubstantiated assumptions"); *Reyna v. Fore Golf Management, Inc.*, 2015 U.S. Dist. LEXIS 26015, 2015 WL 881390, *1 (C.D. Cal. 2015) (granting motion to remand in wage and hour class action where plaintiff moved to remand based solely on challenges to defendant's evidence and assumptions in calculating the amount in controversy).

Here Plaintiff contests the sufficiency of Defendants evidence, Defendants have provided nothing but vague assertions and incorrect legal assumptions to satisfy the amount in controversy in their removal paperwork which was not filed until 90 days after service of Plaintiff's complaint.  Defendants then kept their removal paperwork purposefully vague so as to delay proceedings and require additional law and motion practice to illicit any information regarding the propriety of the jurisdiction of the court.

## V.   DEFENDANTS FAILED TO SHOW THAT THE PUTATIVE CLASS'S AGGREGATE CLAIMS EXCEED $5,000,000

When the amount in controversy is challenged, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million . . . ." *Ibarra*, 775 F.3d at 1197. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (quotations and citations omitted). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

Although "a damages assessment may require a chain of reasoning that includes assumptions," those assumptions must be reasonable. *Ibarra*, 775 F.3d at 1199. Courts generally distinguish between complaints alleging "uniform"

violations as compared to those alleging a "pattern and practice" of labor law violations. *See, e.g., Dobbs v. Wood Grp. PSN, Inc.,* 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016); *Duberry v. J. Crew Group, Inc.*, 2015 U.S. Dist. LEXIS 99171, 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015). "[W]here a plaintiff's complaint specifically alleges a 'uniform' practice, if a defendant in its amount-in-controversy calculus assumes a 100 percent violation rate *and* the plaintiff offers no competent evidence in rebuttal to a defendant's showing, courts have found a defendant's assumption to be reasonable." *Dobbs*, 201 F. Supp. 3d at 1188. In contrast, "where, rather than universal, a plaintiff alleges a 'pattern and practice' of labor violations, the Ninth Circuit has found that a defendant's assumption of a 100 percent violation rate would be unreasonable." *Id.* (citing *Ibarra*, 775 F.3d at 1198-99). Indeed, "'a pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198-99.

While Defendants can aggregate the claims of the putative class for the amount in controversy under CAFA, they still fail to properly show the requisite minimum jurisdictional amount of $5,000,000. Here, Defendants' calculations of the amount in controversy of the aggregated putative class under CAFA are inaccurate as these calculations are based on the Class Members' entire time working for the Defendants, rather than the time worked in California (or worked by California residents). Defendants have not articulated the number of putative class members who are residents of California who may have claims under the California Labor Code for work completed outside of California. See *Sullivan v. Oracle Corp*. 51 Cal.4th 1191 (2011).

### a. The California Labor Code Does Not Authorize Non-Residents to Recover for Work Completed Outside of California

Defendants calculations of the amount in controversy, to the extent any were done, are not limited to worked performed in California. For instance, the Defendants refer to all deductions made from the putative class members pay for

"fuel, insurance, maintenance, repair, and tax expenses." (Dckt. 1 at 4:8-9). However, there is nothing that suggests the amount in controversy calculation by Defendants is remotely connected to any amounts that could reasonably be in controversy under California law, because the Plaintiff's class definition includes class members who worked in California, but were not California citizens. The most recent case from the California Supreme Court regarding the extraterritorial application of California employment laws suggests a limited scope for extraterritorial application. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1199 (2011) ("We foresaw . . . only limited extraterritorial application of California's employment laws, precisely balanced by interstate comity"); *see also Yarian v. All Freight Carriers Inc.*, 2020 CV 19-9172 DSF (Ex), 2020 U.S. Dist. LEXIS 17141,*3 (C.D.Cal. January 31, 2020) (remanding after finding "Defendants provide no evidence of the nature of Plaintiff's work outside of California so there is no basis to believe that extraterritoriality would apply to any of his out-of-state work, let alone all of it"). Here, Defendants provide nothing to support inclusion, under California law, for recovery by non-residents working outside of California (or even for work by California residents that took place entirely outside of California). Though *Sullivan* does leave open the possibility that California statutes could apply to work by California residents outside the state where the California residents leave the state during the course of the normal workday and return. *Id*. Defendants, however, provide no evidence of the nature of putative class members' work outside of California.  As such, there is no basis to believe that extraterritoriality would apply to any of the putative class members out-of-state work, let alone all of it, including that performed by non-residents.

### b. **Defendants Failed to Establish a Correct Calculation of Attorney's Fees in the Amount in Controversy**

Defendants correctly state that it is proper for Defendants to include "attorneys' fees recoverable by statute or contract when assessing whether the

amount-in-controversy requirement is met." *Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, Defendants still are required to meet their evidentiary burden in doing so:

> [W]e require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary-judgment-type evidence . . . . A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof. . . . In estimating future attorneys' fees, district courts may likewise rely on 'their own knowledge of customary rates and their experience concerning reasonable and proper fees.

*Fritsch, 899 F.3d* at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Defendants wholly rely upon citations to attorneys' fee awards in other cases to support its contention that with Plaintiff's "request for attorney's fees, there can be no question that the amount in controversy exceeds $5,000,000." (Dckt. 1 at 4:6-7). Defendants make no attempt to analogize the facts or circumstances of those cases, to the present matter. This approach has been directly rejected by other courts finding that without more, such basic numerical comparisons are insufficient support of Defendant's allegations as to the amount in controversy. *See, e.g.,* *Gonzalez v. Hub International Midwest Limited*, No. ED CV 19-557 PA (ASx), 2019 U.S. Dist. LEXIS 79672, 2019 WL 2076378, at *6 (C.D. Cal. May 10, 2019) ("Defendant's mere citation to cases in which counsel sought larger proportions of a class's recovery as attorneys' fees, without more, does not support Defendant's allegations as to the amount in controversy here."); *Serrano v. Pac. Coast Feather Cushion Co.*, No. CV 17-4414-DMG (JEMx), 2017 U.S. Dist. LEXIS 138153, 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' ... [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. Thus, Defendants'

1    citation to these cases does not satisfy their burden of showing the amount in

2    controversy through evidence and argument." (citation omitted)).

3         Defendants have not carried their burden of "prov[ing] that the amount in

4    controversy (including attorneys' fees) exceeds the jurisdictional threshold by a

5    preponderance of the evidence... with summary-judgment-type evidence." *Fritsch,*

6    *899 F.3d at 795* (quoting *Ingram, 647 F.3d at 928*).  Indeed, the underlying case law

7    for use of a 25% benchmark for attorneys' fees is an inaccurate approach to

8    increase the amount in controversy as it arises from situations, like class

9    settlements, where the 25% award in class actions is a percentage of the class's

10   recovery; it is not added to the class's recovery. See *Staton v. Boeing Co.*, *327 F.3d*

11   *938, 968 (9th Cir. 2003)*; *Hanlon v. Chrysler Corp.*, *150 F.3d 1011, 1029 (9th Cir.*

12   *1998)*.  Even Defendants own case authority looks to the approved percentage of a

13   common fund of a settlement. See *Vasquez v. Coast Valley Roofing, Inc.*, *266 F.R.D.*

14   *482, 491, 2010 U.S. Dist. LEXIS 21159, *26-28 (E.D.Cal. March 8, 2010)* (finding

15   that "where the Settlement requires lump sum allocations to each Settlement Class

16   and applies distribution formulas pursuant to which each Class Member who

17   submits a valid claim will receive a mathematically ascertainable payment,

18   application of the  percentage of common fund doctrine appropriate.") *see also*

19   *Romero v. Producers Dairy Foods, Inc.*, *No. 1:05-cv-0484-DLB, 2007 U.S. Dist.*

20   *LEXIS 86270, *8 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)* ("The Ninth Circuit

21   has repeatedly held that 25 percent of the gross settlement amount is the benchmark

22   for attorneys' fees awarded under the percentage method, with 20 to 30 percent as

23   the usual range.") As such, Defendants have failed to "to prove that the amount in

24   controversy (including attorneys' fees) exceeds the jurisdictional threshold by a

25   preponderance of the evidence." *Fritsch, 899 F.3d at 795*.

26        **c.  <u>Defendants' Overinclusive Calculations Are Insufficient to Show</u>**

27            **<u>Amount in Controversy</u>**

28   Courts in the Central District of California have found over-inclusive

calculations to be insufficient to justify removal jurisdiction. *See, e.g., Roth v. Comerica Bank*, 799 F.Supp.2d 1107 (C.D.Cal. 2010); *see also Pereira v. Gate Gourmet, Inc.*, Not Reported in F.Supp.2d 2009 WL 1212802 (C.D.Cal. April 30, 2009) (finding defendant's evidence of the amount in controversy to be insufficient where defendant calculated value of claims based on 30-day period but facts alleged in complaint suggested no more than 10-day period); *Zackaria v. Wal-Mart Stores, Inc.*, 2011 WL 6065169 at *3 (C.D. Cal. Dec. 5, 2011) (removing defendant failed to demonstrate its calculations were grounded in the claims asserted rather than mere conjecture which conveniently reached the jurisdictional threshold).

In *Roth*, a former employee brought a putative class action in state court against banking corporations, alleging hour and wage violations under California law, and the defendants removed. *Roth*, 799 F.Supp.2d at 1111.  In attempting to calculate the amount in controversy as to class claims for unpaid overtime, the defendants in *Roth* multiplied the number of hours in question by "$19.50, plaintiff's standard overtime wage."  *Id*. at 1119.  The district court found such a calculation unsupported by the claims alleged in the plaintiff's complaint:

> The hourly wage of $19.50 that defendants use in this calculation, however, does not reflect the overtime claim asserted in the complaint. Roth alleges that he "was often not paid an overtime rate for the overtime hours that he worked." He does not allege that he was paid less than his regular wage of $13 an hour for such work. Defendants thus should have based their calculation on the additional $6.50 per hour Roth was entitled to receive for overtime work, not on the total overtime wage of $19.50.

*Id*.  Similarly, in the present case, Defendants are trying to justify removal based on the total work done by putative class members during the class period, even though it "does not reflect the … claim asserted in the complaint." The wage and hour claims that Defendants look to for calculating the amount in controversy are all asserted under the California Labor Code.  As previously discussed, such claims, do not extend to time worked outside the state of California, save for potentially those putative class members who are residents of California.  Defendants have made no

statement as to the work done by putative class members in California, nor identified the number of putative class members, if any, that are residents of the state of California.  The claims are not for anything close to the total work done by the putative class members for Defendants in all states.

In *Roth*, the court also noted that "in evaluating whether a party has met its burden of proof with respect to jurisdiction, several circuits have held that it is proper for district courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met." *Roth*, 799 F.Supp.2d at 1129-1130; *see, e.g., Amoche v. Guarantee Trust Life Insurance Co.*, 556 F.3d 41, 51 (1st Cir. 2009) ("[D]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what both parties have shown…. In the course of that evaluation, a federal court may consider which party has better access to the relevant information."); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447–48 (7th Cir, 2005) ("Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction. … When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information—so that the choice between state and federal court may be made accurately—is much to be desired").  In granting the motion to remand in *Roth*, the court noted that "defendants are in the best position to adduce evidence regarding the working hours and wages of their tellers."

In the present case, Defendants alone have access to the information regarding the work done by drivers in question that could be used to determine the amount in controversy.  Not only have Defendants failed to properly distinguish between the drivers who drove in California and those who are California residents and may have claims for work done outside of California under *Sullivan v. Oracle*, but Defendants have failed to show any such basis for jurisdiction.

## VI.    CONCLUSION

Based on the foregoing argument and authority, Plaintiff respectfully requests that the Court remand this case to Los Angeles Superior Court.

Dated:  February 10, 2020                    Respectfully Submitted,

**THE KICK LAW FIRM, APC**

By:      /s/ Daniel J. Bass
         Taras Kick
         Daniel J. Bass
         Attorneys for Plaintiff Clayton Salter
         on behalf of himself and all others
         similarly situated