Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700
F: 626-795-4790

Christopher J. Eckhart, admitted *Pro Hac Vice*
ceckhart@scopelitis.com
E. Ashley Paynter, admitted *Pro Hac Vice*
apaynter@scopelitis.com
Alaina C. Hawley (SBN 309191)
ahawley@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777
F: 317-687-2414

Attorneys for Defendants,
Quality Carriers, Inc. and Quality Distribution, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON SALTER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUALITY CARRIERS, INC., an Illinois Corporation; QUALITY DISTRIBUTION, INC., a Florida Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-00479-JFW-JPR<br><br>**DEFENDANTS RESPONSE IN OPPOSITION TO MOTION TO REMAND TO LOS ANGELES SUPERIOR COURT**<br><br>Hearing Date:  March 9, 2020<br>Time:  1:30 p.m.<br>Courtroom:  7A<br>Judge:  Hon. John F. Walter |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.   BACKGROUND ...................................................................................2

III.   ARGUMENT.........................................................................................3

    A.   The Ninth Circuit Applies a "Bright-Line" Test to Determine Whether the Initial Complaint Triggers a Defendant's 30-Day Removal Clock. ...................................................................................4

    B.   Under the "Bright-Line" Test, the Complaint Did not Trigger the 30-Day Removal Clock Because it was Indeterminate About the Amount in Controversy. ......................................................................6

    C.   CAFA's amount in controversy threshold is met................................8

        1.   1.Plaintiff's Complaint places expenses incurred both inside and outside California at issue. ..........................................................8

        2.   2.The evidence demonstrates that Plaintiff's claims under Section 2802 place more than $5,000,000 in controversy on their own. ..........................................................................................14

IV.   CONCLUSION....................................................................................16

1

## TABLE OF AUTHORITIES

2

### Cases

3   *Aghayani v. Dial Indus. Sales, Inc.*, No. 217CV04684SVWJEM,
    2017 WL 7833632 (C.D. Cal. Aug. 23, 2017).........................................................1

4   *Arias v. Residence Inn By Marriott*,
5      936 F.3d 920 (2019)..................................................................... 3, 8, 9, 10

6   *Avila v. Kiewit Corp.*,
       789 F. App'x 32 (9th Cir. 2019) ...........................................................13

7   *Broadway Grill, Inc. v. Visa Inc.*,
       856 F.3d 1274 (9th Cir. 2017) ........................................... 10, 11, 12, 13

8   *Cisneros v. Lerner New York, Inc.*, No. Z:16:cv-02722-CAS(Ex),
       2016 WL 4059612...................................................................................8

9   *Dart Cherokee Basin Operating Co., LLC v. Owens*,
10     574 U.S. 81 (2014) .............................................................................3, 8

11  *Garcia v. Gen. Motors LLC*,
       No. 818CV01893JLSKES, 2019 WL 247227 (C.D. Cal. Jan. 17, 2019).............5

12  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
       599 F.3d 1102 (9th Cir. 2010) ..............................................................10

13  *Harris v. Bankers Life & Cas. Co.*,
       425 F.3d 689 (9th Cir. 2005)........................................................... 4, 5, 6

14  *Henry v. Central Freight Lines, Inc.*,
15     692 Fed. Appx. 806 (9th Cir. 2017)........................................... 11, 12, 13

16  *Ibarra v. Manheim Investments, Inc.*,
       775 F.3d 1193 (9th Cir. 2015) ..............................................................10

17  *Jasso v. Money Mart Exp., Inc.*,
       No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012)............9, 10

18  *Kastler v. Oh My Green, Inc.*,
       No. 19-cv-02411-HSG, 2019 WL 5536198, at (N.D. Cal. Oct. 25, 2019)...........3

19  *Kenny v. Wal-Mart Stores, Inc.*,
20     881 F.3d 786 (9th Cir. 2018).................................................................5

21  *Kuxhausen v. BMW Fin. Servs. NA LLC*,
       707 F.3d 1136 (9th Cir. 2013) .......................................................... 4, 5, 6, 7

22  *LaCross v. Knight Transp., Inc.*,
       775 F.3d 1200 (9th Cir. 2015) ................................................. 8, 11, 12, 14, 15

23  *Ly v. J.B. Hunt Transp., Inc.*,
       No. 2:19-cv-01334-SVW-SS, 2019 WL 2902501 (Apr. 25, 2019).....................1

24  *Martinez v. Joe's Crab Shack, Inc.*,
       No. CV092084SVWJWJX, 2009 WL 10672639
25     (C.D. Cal. June 4, 2009)................................................................. 4, 5, 6

26  *Pereira v. Gate Gourmet, Inc.*,
       Case No. 08-07469 MM (PJWx), 2009 WL 1212802
27     (C.D. Cal. Apr. 30, 2009)...................................................................10

28  *Pugh v. Metro. Life Ins. Co.*,
       No. 18-cv-01506-YGR, 2019 WL 484279, at (N.D. Cal. Feb. 7, 2019)...........10

*Reyes v. CVS Pharmacy, Inc.*, No. 1:14-CV-00964 MJS, 2014 WL 3938865
(E.D. Cal. Aug. 11, 2014) ................................................................5

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
720 F.3d 1121 (9th Cir. 2013) ................................................ 4, 5, 8

*Roth v. Comerica Bank*,
799 F. Supp. 2d 1107 (C.D. Cal. 2010) .........................................10

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ......................................................................11

*Spencer Enters., Inc. v. U.S.*,
345 F.3d 683 (9th Cir. 2003) .........................................................12

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013) ......................................................................11

*Taylor v. United Rd. Servs., Inc.*,
313 F. Supp. 3d 1161 (E.D. Cal. 2018) ...........................................5

*Thompson v. Progressive W. Ins. Co.*,
No. EDCV111828AGOPX, 2012 WL 13014963 (C.D. Cal. Feb. 13, 2012)....1, 5

*Tubbs v. AdvoCare Int'l, LP*,
No. CV174454PSGAJWX, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) .........5

*Walters v. Famous Transports, Inc.*,
No. 4:19-cv-08016-YGR, 2020 WL 607067 (Feb. 7, 2020) ........................ 13, 14

*Yarian v. All Freight Carriers Inc.*,
No. CV 19-9172 DSF (EX), 2020 WL 507362 (C.D. Cal. Jan. 31, 2020)..........11

*Zackaria v. Wal-Mart Stores, Inc.*,
Case No. EDCV 11-01418 VAP (DTBx), 2011 WL 6065169, at
(C.D. Cal. Dec. 5, 2011) ................................................................10

**Other Authorities**

California Labor Code § 2802 ..........................................................1,8
California Labor Code § 203 ............................................................3,7
California Labor Code § 226 ............................................................3,7
28 U.S.C. § 1332(d)(2)................................................................... 3
28 U.S.C. 1446(b) ..........................................................................4,5

Defendants, Quality Carriers, Inc. and Quality Distribution, Inc. (collectively, Quality), respectfully submit this Memorandum of Points and Authorities in Support of their Response in Opposition to Motion to Remand to Los Angeles Superior Court ("Motion").

## I.   INTRODUCTION

Plaintiff challenges Quality's removal as untimely and failing to support its allegation that the jurisdictional amount in controversy limit is met. Neither the facts nor the law support Plaintiff's position. Indeed, Plaintiff's argument is predicated on two flawed premises: (1) that a defendant is obligated to reach beyond the four corners of a plaintiff's complaint to marry the plaintiff's allegations with information contained within the defendant's records and (2) that Plaintiff is not bound by the plain language of his complaint even though it squarely places more than $5,000,000 in controversy.

In essence, Plaintiff takes the position that he is entitled to serve an overbroad complaint devoid of factual allegations and then use that vagueness as both a sword and a shield to save him from federal jurisdiction. But the Ninth Circuit does not permit such gamesmanship. With respect to timeliness, as this Court has held over and over, a defendant's subjective knowledge and ability to investigate the allegations in the complaint does not start the removal clock.  To the contrary, for the removal clock to start, it is incumbent on a plaintiff to place "*specific allegation[s]* that damages are in excess of the federal jurisdictional amount." *Thompson v. Progressive W. Ins. Co.*, No. EDCV111828AGOPX, 2012 WL 13014963, at *2 (C.D. Cal. Feb. 13, 2012) (emphasis in original) (citations omitted); *see also Ly v. J.B. Hunt Transp., Inc.*, No. 2:19-cv-01334-SVW-SS, 2019 WL 2902501, at *1-*2 (Apr. 25, 2019); *Aghayani v. Dial Indus. Sales, Inc.*, No. 217CV04684SVWJEM, 2017 WL 7833632, at *2 (C.D. Cal. Aug. 23, 2017)*Aghayani v. Dial Indus. Sales, Inc.*, No. 217CV04684SVWJEM,2017 WL 7833632 (C.D. Cal. Aug. 23, 2017).

On the question of the amount in controversy, despite Plaintiff's protestations, he does not limit his claim for relief under California Labor Code § 2802 (Section 2802)

for allegedly unreimbursed business expenses to those incurred by Plaintiff or the putative class while performing work in California. *Complt.*, ¶ 54, ECF No. 9-1. Rather, the Complaint alleges that Plaintiff is entitled to indemnification for all expenses or losses that he incurred directly as a result of the work he performed for Quality, and that he seeks "reimbursement of all necessary expenditures." *Id.* Plaintiff's post-removal gloss on the Complaint—that it only seeks damages incurred in California—is betrayed by Plaintiff's admission that the Complaint seeks damages for alleged Labor Code violations outside the state of California for California-resident class members. *Plaintiff's Mem. in Supp. of Mot. to Remand* at 15:16-20; 19:26-28, ECF No. 17-1. Defendants, therefore, properly considered all fuel and insurance expenses incurred by the members of the putative class to estimate the amount in controversy, and the designated evidence demonstrates Plaintiff's claims have placed more than $5,000,000 in controversy.

Plaintiff's Motion should be denied.

## II.   BACKGROUND

In his Complaint, Plaintiff defined the putative class as "all current and former non-exempt employees, including but not limited to those misclassified as independent contractors, of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment" *Complt.*, ¶ 5, ECF No. 9-1. Substantively, Plaintiff alleges that Quality failed to pay him minimum wage and overtime for all hours worked. *Complt.*, ¶¶ 29-36, ECF No. 9-1. Plaintiff also alleges he was denied California-compliant meal and rest breaks. *Complt.*, ¶¶ 20-28, ECF No. 9-1. Plaintiff also claims he and the putative class are entitled to indemnification for "*all* business expenses and/or losses incurred in direct consequence of their duties while working under the direction of [Defendants], including but not limited to expenses for uniforms, cell phone usage, and other employment-related expenses. . . ." *Complt.*, ¶ 54 (emphasis added), ECF No. 9-1. Plaintiff also seeks recovery for violations of California Labor

Code §§ 203 and 226, among other things. Nothing on the face of the Complaint limits Plaintiffs' requested recovery to expenses incurred or time spent in California.

In the Notice of Removal, ECF No. 1, Quality cited the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Plaintiff does not dispute the existence of minimal diversity or the existence of the requisite number of putative class members. However, Plaintiff does challenge the timeliness of Quality's removal and the amount in controversy that Quality alleged. Because Plaintiff's Complaint does not disclose enough information within its four corners for Quality to ascertain the amount in controversy, without resort to its own records, the removal clock has not run. Quality's Notice was timely. Further, because Quality's jurisdictional allegations are anchored to the allegations in Plaintiff's Complaint and well supported by the evidence submitted with this Memorandum, Plaintiff's argument with respect to the amount in controversy fails. Consequently, Plaintiff's Motion must be denied.

## III.   ARGUMENT

The Ninth Circuit has recently reaffirmed its understanding that "[n]o antiremoval presumption attends cases invoking CAFA." *Arias v. Residence Inn By Marriott*, 936 F.3d 920, 922 (2019) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("Dart Cherokee")). Accordingly, a removing defendant's notice of removal need only contain "plausible allegations of the jurisdictional elements." *Id.* When a plaintiff challenges the removing defendants' jurisdictional allegations, the removing party must establish them by a preponderance of the evidence. *See Dart Cherokee*, 574 U.S. at 88; *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *3 (N.D. Cal. Oct. 25, 2019).

Here, Plaintiff has challenged both the timeliness of Quality's Notice of Removal and whether it can adequately support the amount that it pled is in controversy. As discussed below, Plaintiff's arguments must fail. First, Quality's Notice of Removal was timely. And, regardless of whether the Court accepts Plaintiff's invitation to read unpled geographic limitations into his complaint, Quality has demonstrated by a

preponderance of the evidence that it can meet the amount in controversy requirement. Plaintiff's Motion must be denied.

A.    **The Ninth Circuit Applies a "Bright-Line" Test to Determine Whether the Initial Complaint Triggers a Defendant's 30-Day Removal Clock.**

The federal removal statute, 28 U.S.C. 1446(b), imposes two deadlines on removal. First, if a case "stated by the initial pleading is removable on its face," a defendant must remove within 30 days of service of that pleading. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *Id.* § 1446(b)(1). Second, "if the case stated by the initial pleading is not removable," then the defendant may remove within 30 days after receiving "an amended pleading, motion, or other paper from which it may first be ascertained that the case is . . . removable." *Id.* § 1446(b)(3). Further, a defendant may remove at any time "outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

The Ninth Circuit applies a "bright-line" test to determine whether the initial complaint triggers a defendant's 30-day removal clock: the 30-day removal clock runs from the defendant's receipt of the initial complaint *only if* the complaint "affirmatively reveals *on its face* the facts necessary for federal court jurisdiction." *Harris*, 425 F.3d at 690-91 (emphasis added) (quotations omitted). Consequently, "[i]n order for the thirty day period to run from the initial pleading, it must be unequivocally clear and certain from the face of the pleading that the jurisdictional basis has been satisfied." *Martinez v. Joe's Crab Shack, Inc.*, No. CV092084SVWJWJX, 2009 WL 10672639, at *1 (C.D. Cal. June 4, 2009) (internal quotations omitted). A complaint fails the "bright-line" test—and is thus "indeterminate"—if it neither alleges a specific amount in controversy nor includes "figures clearly stated in [the] complaint" from which the defendant could calculate the amount in controversy. *Kuxhausen v. BMW Fin. Servs.*

*NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013).[1] This test absolves defendants from "mak[ing] extrapolations or engag[ing] in guesswork" to determine whether the amount in controversy is satisfied. *Id.* at 1140.

In applying the "bright-line" test, the Ninth Circuit has repeatedly held that a defendant is under no "duty to make further inquiry" into jurisdictional facts by investigating the complaint's allegations or reviewing its own files. *Harris*, 425 F.3d at 694; *Roth*, 720 F.3d at 1125; *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018). A defendant "is not obligated to supply information" the plaintiff omits. *Kuxhausen*, 707 F.3d at 1141. "[A] defendant has no duty to investigate to determine jurisdictional facts, even if the complaint contains 'clues' to removability." *Aghayani*, 2017 WL 7833632, at *2. This is true even if the defendant possesses records from which it could ascertain removability because a defendant "[is] under no obligation to review . . . records to ascertain jurisdictional evidence". *Garcia v. Gen. Motors LLC*, No. 818CV01893JLSKES, 2019 WL 247227, at *3 (C.D. Cal. Jan. 17, 2019).

Similarly, "Defendant's subjective knowledge that the amount in controversy could have been satisfied is irrelevant." *Martinez*, 2009 WL 10672639, at *1; *Harris*, 425 F.3d at 694. Specifically, a "defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant." *Roth*, 720 F.3d at 1126

---

[1] *See, e.g.*, *Taylor v. United Rd. Servs., Inc.*, 313 F. Supp. 3d 1161, 1172 (E.D. Cal. 2018) (holding complaint and other papers failed "the Ninth Circuit's bright-line rule" because none "contained a specific indication that the jurisdictional threshold had been met"); *Tubbs v. AdvoCare Int'l, LP*, No. CV174454PSGAJWX, 2017 WL 4022397, at *4 (C.D. Cal. Sept. 12, 2017) (rejecting argument that removal was untimely "because no amount in controversy was pleaded" and defendant could not calculate jurisdictional minimum from the face of the pleadings); *Reyes v. CVS Pharmacy, Inc.*, No. 1:14-CV-00964 MJS, 2014 WL 3938865, at *5 (E.D. Cal. Aug. 11, 2014) ("Neither the complaint nor the e-mail expressly provide the number of potential class members or the amount of damages at issue. As such, they are 'indeterminate' and neither thirty day removal period discussed under 28 U.S.C. § 1446(b) has commenced in this case."); *Thompson*, 2012 WL 13014963, at *2 ("The *Harris* court made clear that 'the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint *explicitly discloses* the plaintiff is seeking damages in excess of the federal jurisdictional amount.'" (emphasis in original) (quoting *Harris*, 425 F.3d at 698 n.5)).

1   (internal quotations omitted). Instead, "notice of removability . . . is determined through

2   examination of the four corners of the applicable pleadings, not through subjective

3   knowledge or a duty to make further inquiry." *Harris*, 425 F.3d at 694.

4      **B.   Under the "Bright-Line" Test, the Complaint Did not Trigger the 30-**

5           **Day Removal Clock Because it was Indeterminate About the Amount**

6           **in Controversy.**

7      Plaintiff's Complaint fails the "bright-line" test. Not one of the 72 paragraphs of

8   allegations in the Complaint contains an amount in controversy. *See generally*

9   *Complaint*, ECF No. 9. Further, there are no "figures clearly stated in [the] complaint"

10  from which Quality could calculate the amount in controversy. *Kuxhausen*, 707 F.3d at

11  1140. Instead, Quality had to venture beyond the four corners of the Complaint and

12  investigate Plaintiff's allegations in combination with its records to ascertain the

13  amount in controversy. Plaintiff argues that Quality was "undoubtedly aware of the

14  basis of CAFA jurisdiction at the outset of the matter." *Pl.'s Mem. in Supp. Mot. to*

15  *Remand* at 8:18-20, ECF No. 17-1. But if the Complaint is indeterminate as to the

16  amount in controversy, a "[d]efendant's subjective knowledge that the amount in

17  controversy could have been satisfied is irrelevant." *Martinez*, 2009 WL 10672639, at

18  *1 (applying *Harris,* 425 F.3d at 694).

19     The Complaint here is indeterminant as to the amount in controversy, and

20  Plaintiff makes no attempt to argue otherwise. Specifically, the Complaint does not

21  contain enough information for Quality to calculate the amount in controversy without

22  reference to information outside its four corners. Indeed, Plaintiff's Complaint contains

23  even less information than the complaint at issue in Kuxhausen, 707 F.3d 1136. In that

24  case, the complaint at issue specified that the Plaintiff was seeking rescission of a

25  vehicle contract exceeding $50,000 and, further, that he sought to represent a class on

26  the same claim. *Id.* at 1140. But, the complaint did not allege the value (or even an

27  approximation) of the other putative class members' contracts. *Id.* at 1140-41. Without

28  that value, even though the complaint alleged the class contained "hundreds" of

individuals, the Ninth Circuit held that the defendant was not "obligated to supply the information" that the plaintiff omitted. *Id.* at 1141. Thus, the removal clock did not start running even when the complaint contained some figures that could give rise to a reasonable assumption as to the amount in controversy. And, this rule makes good sense because it "forces plaintiffs to assume the costs associated with their own indeterminate pleadings." *Id.*

Here, Plaintiff's complaint does not allege the number of putative class members. It does not even allege any facts from which Defendant could intelligently ascertain the factual predicates of his claims. Instead, it simply seeks to recover: (1) "one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided"; (2) "one additional hour of compensation at each employee's regular rate of pay for each workday that  a rest period was not provided"; (3) the unpaid balance of wages allegedly due and owing plus interest, penalties, and attorneys' fees; (4) all available statutory penalties, including the waiting time penalties provided in California Labor Code § 203 and those available under California Labor Code § 226(e); and (5) reimbursement of all necessary expenditure. *Complt.*, ¶¶ 23, 27, 33, 37, 43, 47, 51, 55, 64, 73, ECF No. 9-1. Nothing in the allegations gives Quality a basis to determine the amount in controversy without reference to its own records. This is not to say that Quality cannot plausibly establish that the amount in controversy is met. "[W]hether a defendant can establish federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin." *Kuxhausen*, 707 F.3d at 1141 n.3. As discussed below, Quality has demonstrated by a preponderance of the evidence that the amount in controversy threshold has been met.

In sum, Plaintiff's complaint did not cross the Ninth Circuit's "bright line" and start the removal clock. Indeed, starting it was well within Plaintiff's control, but he chose not to. The Ninth Circuit does not permit him to leave Quality holding the bag for his failure to clearly plead the amount his complaint placed in controversy. Because the Complaint was indeterminate as to the amount in controversy, Quality's receipt of

the Complaint did not trigger its 30-day clock to remove, and the Notice of Removal was timely. *Roth*, 720 F.3d at 1125.

### C. CAFA's amount in controversy threshold is met.

When, as here, a plaintiff challenges the defendant's assertion of the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Dart*, 574 U.S. at 88. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Cisneros v. Lerner New York, Inc., No. Z:16:cv-02722-CAS(Ex),* 2016 WL 4059612, at *3 (C.D. Cal. Jul. 25, 2016) (internal quotations and citations omitted). The removing defendant is further entitled to rely on "reasonable assumptions" from the Plaintiff's allegations in determining the amount in controversy. *Arias*, 936 F.3d at 922; *see also LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015). By its own terms, Plaintiff's Complaint places *all* expenses that the putative class members incurred in controversy, and Defendants have demonstrated by a preponderance of the evidence that those expenses exceed $5,000,000. The Court should deny Plaintiff's motion.

#### 1. Plaintiff's Complaint places expenses incurred both inside and outside California at issue.

In the Notice of Removal, Quality alleged that Plaintiff's claims placed at least $5,000,000 in controversy. *See* ECF No. 1. This allegation is well grounded in Plaintiff's Complaint. Specifically, Plaintiff's Section 2802 allegation is:

> During the CLASS PERIOD, DEFENDANTS knowingly and willfully failed to indemnify PLAINTIFF and CLASS MEMBERS for *all* business expenses and/or losses *incurred in direct consequence of the discharge* of their duties while working under the direction of DEFENDANTS, including but not limited to expenses for uniforms, cell phone usage, and

other employment-related expenses, in violation of California Labor Code
§ 2802.

*Complt.*, ¶ 54 (emphasis added), ECF No. 9-1. This claim specifically seeks recovery
for *all* business expenses the putative class members incurred as a direct consequence
of the discharge of duties Plaintiff and the putative class allegedly performed at
Defendants' direction. *Complt.*, ¶ 55, ECF No. 9-1. As it was entitled, Quality took
Plaintiff at his word and calculated just a portion of the alleged Section 2802 damages
to which Plaintiff claims he and the putative class are entitled. *Arias*, 936 F.3d at 925-
26; *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 (N.D.
Cal. Mar. 1, 2012). As explained below, that number exceeds the jurisdictional limit.
Quality has met its burden to demonstrate that Plaintiff placed more than $5,000,000 in
controversy.

Plaintiff does not argue that the types of expenses Quality identified in the Notice
of Removal are not what he seeks to recover. Instead, he seems to suggest the amount
in controversy should be limited to expenses the putative class incurred in California or
those that were incurred by California residents. But Plaintiff's Complaint contains no
such limitation; it alleges that Plaintiff and the putative class are entitled to
indemnification for *all* expenses or losses that they incurred directly as a result of the
work they performed for Defendants. *Complt.*, ¶¶ 54-55, ECF No. 9-1. Though the
proposed class definition limits the *membership* of the class to drivers who, at some
point, performed work *in California*, nothing in the Complaint limits the geographic
reach of the conduct that Plaintiff's claim violated California law and the damages they
seek for that allegedly unlawful conduct.

Plaintiff's admission that some members of the putative class "may" have claims
under the California Labor Code for work completed outside of California confirms the
Complaint lacks the limitation Plaintiff advances in his Motion. *See Pl's Mem. in Supp.
of Mot. to Remand* at 15:16-20; 19:26-28, ECF No. 17-1. The Complaint draws no
distinction between California residents and non-residents. So, if the Complaint seeks

damages for conduct outside of California for California residents, then it must necessarily be seeking damages for conduct outside of California for all putative class members. The fact Plaintiff will face an uphill battle recovering all the damages they purport to seek in their Complaint is irrelevant. The existence of defenses, even valid defenses, cannot defeat the amount that the Complaint, by its allegations, places in controversy. *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Pugh v. Metro. Life Ins. Co.*, No. 18-cv-01506-YGR, 2019 WL 484279, at *3-*6 (N.D. Cal. Feb. 7, 2019). The only reasonable reading of the Complaint is that Plaintiff seeks recovery of all business expenses that the putative class incurred regardless of where they were incurred. Accordingly, the amount in controversy threshold is met.

The cases Plaintiff cites do not change this analysis. In each of those cases, the removing defendant made assumptions in calculating the total amount in controversy that were not rooted in the complaint at issue. *See Pls.' Mem. in Supp. of Mot. to Remand* at 18-19 (discussing *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107 (C.D. Cal. 2010); citing *Pereira v. Gate Gourmet, Inc.*, Case No. 08-07469 MM (PJWx), 2009 WL 1212802 (C.D. Cal. Apr. 30, 2009); *Zackaria v. Wal-Mart Stores, Inc.*, Case No. EDCV 11-01418 VAP (DTBx), 2011 WL 6065169, at *3 (C.D. Cal. Dec. 5, 2011)), ECF No. 17-1. For example, in *Roth v. Comerica Bank*, the removing defendant included the plaintiff's straight time rate in the calculation of potential damages on the plaintiff's overtime claim. 799 F. Supp. 2d at 1119. The Court concluded that assumption was inappropriate because there was nothing in the complaint or the record to support the idea that the plaintiff had not received his straight time rate for his overtime hours. *Id.* Unlike the defendant in *Roth*, Quality's calculations are rooted firmly in the allegations Plaintiff himself makes. Plaintiff cannot now run from those allegations to avoid this Court's jurisdiction. *See Arias*, 936 F.3d at 926 (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198-99 (9th Cir. 2015)); *Jasso*, 2012 WL 699465, at *2.

Indeed, it is well settled that the Court must determine the propriety of removal "on the basis of the pleadings at the time of removal." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (internal quotations omitted). Plaintiff cannot use his motion to remand in order to attempt to amend his complaint to avoid jurisdiction. For example, in *Henry v. Central Freight Lines, Inc.*, 692 Fed. Appx. 806, 806-07 (9th Cir. 2017), the court held that the truck driver plaintiff could not deprive the district court of jurisdiction by placing a geographical restriction on the putative class's Section 2802 claims in his motion to remand when none existed in the complaint. Plaintiff has not sought formal leave to amend their complaint and rightly so: The Ninth Circuit does not permit plaintiffs to "amend their class definition, add or remove defendants, or add or remove claims in such a way that would alter [the Court's] essential jurisdictional analysis." *See Broadway Grill*, 856 F.3d at 1279.

To the extent Plaintiff is attempting to voluntarily concede he cannot recover expenses incurred outside of California in connection with his Section 2802 claim, that will not deprive this Court of jurisdiction either. Plaintiff cannot bind the absent class members to such a concession before a class is certified, if it ever is. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011). Instead, the Court must ignore Plaintiff's non-binding statements and aggregate the claims of the individual class members as they are pled in the Complaint. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). As the evidence discussed below demonstrates, it is more likely than not that amount exceeds CAFA's jurisdictional threshold.

Likewise, *Yarian v. All Freight Carriers Inc.*, No. CV 19-9172 DSF (EX), 2020 WL 507362 (C.D. Cal. Jan. 31, 2020), does not change the result here because it was incorrectly decided. Specifically, *Yarian* departs from years' worth of Ninth Circuit precedent. Indeed, in *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015), the Ninth Circuit reversed the district court's order remanding a case involving Section 2802 claims brought by a class of truck drivers seeking to recover fuel expenses against a motor carrier. In holding that the defendant's "chain of reasoning" to calculate the

11

amount in controversy—which relied on "actual invoiced fuel costs"—was reasonable, the Ninth Circuit never questioned whether fuel expenses related to non-California driving should be included. *Id.* at 1203. Indeed, LaCross had made the same argument as Plaintiff does here in their motion to remand in the district court. *See LaCross v. Knight Transp. Inc.*, Case No. 5:14-cv-00771-JGB-JC, ECF. No. 13-2, *Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Remand to State Court* at 10-11; *Id.*, ECF No. 24, *Plaintiffs' Reply to Knight's Opposition to Plaintiffs' Motion to Remand* at 10-11 ("However, in the amount in controversy by Defendants in their notice of removal, Defendant have [sic] made absolutely no effort to quantify the number of miles driven in California as opposed to outside California.."). Because the district court's remand order did not rest on this theory, the plaintiffs did not repeat this argument to the Ninth Circuit and the appellate court did not address it. Nevertheless, the Ninth Circuit's silence suggests that *Yarian's* conclusion that this issue implicates the amount in controversy is incorrect, given that the Ninth Circuit is obligated to assess jurisdiction *sua sponte*. *See Spencer Enters., Inc. v. U.S.*, 345 F.3d 683, 687 (9th Cir. 2003). The Ninth Circuit explicitly rejected plaintiffs' "conten[tion] that the class may not be able to prove all the elements for reimbursement under California Labor Code § 2802, so the amount in controversy likely will not exceed $5 million." *Id.* The court held plaintiffs were "conflating the amount in controversy with *the amount of damages ultimately recoverable*." *Id.* (emphasis added).

Similarly, in Henry, 692 F. App'x 806, the Ninth Circuit again reversed the district court's order remanding a case involving Section 2802 claims brought by a class of truck drivers seeking to recover fuel expenses against a motor carrier. The Ninth Circuit rejected plaintiff's "assert[ion] that the class [was] comprised of only California residents who drove in California and [sought] reimbursement only for work performed in California" because "*the complaint itself [did] not contain these limitations*." *Id.* at 806 (emphasis added). "It is axiomatic that 'whether remand is proper must be ascertained on the basis of the pleadings at the time of removal.'" *Id.* (quoting Broadway

Grill, Inc., 856 F.3d at 1277). The court further rejected plaintiff's argument that defendant could not include lease payments as part of the amount in controversy because those amounts were not recoverable under California law. The court reiterated that "[i]n determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Id.* at 807. The court cited plaintiff's repeated allegations in the complaint seeking reimbursement for "'all costs and expenses of . . . leasing the trucks'" and held that lease payments fell within the scope of those allegations, regardless whether they were not recoverable under California law. *Id.*; *see also* Avila v. Kiewit Corp., 789 F. App'x 32, 33–34 (9th Cir. 2019) (reversing remand order and holding defendant's calculation of "the amount in controversy [was] 'reasonable,' because [it was] sufficiently grounded in the allegations of the Complaint and the evidence provided" and was "tied directly to [plaintiff's] broad allegations in the Complaint").

Recently, the Northern District of California rejected this exact argument. In Walters v. Famous Transports, Inc., No. 4:19-cv-08016-YGR, 2020 WL 607067 (Feb. 7, 2020), the plaintiffs argued that the class definition, and allegations "mirroring California labor laws, supports a narrow interpretation that plaintiffs are only seeking to recovery for amounts incurred in California and by California residents." *Id.* at *3. The Court reasoned that "nothing in the [complaint at issue] limits the geographic reach of the conduct that plaintiffs[] claim violated California law and the damages they seek for that allegedly unlawful conduct. Second, Plaintiff's own arguments, that damages are limited to only work performed in California but also include work performed by California residents in other states, is unsupported by the allegations of the [complaint]." *Id.* at *4. Characterizing the plaintiffs' arguments as "illogical," the court concluded that "Plaintiffs cannot now escape their inartful pleadings as to the geographic scope of damages incurred by the class with post-hoc arguments and characterizations." *Id.*

1    Just so here. Plaintiff's complaint does not contain any geographic limitation on
2    the scope of the damages he seeks to recover. And like the plaintiffs in *Walters*, Plaintiff
3    argues that California residents are entitled to recover for all work they performed, but
4    that non-residents can recover only for California work. This argument is not supported
5    by *any* language in the Complaint. Plaintiff cannot have it both ways. Either his
6    complaint seeks to recover for damages outside of California for the whole class or it
7    doesn't. And, in the face of Plaintiff's assertion that California residents can recover,
8    under the allegations in his complaint, for all business expenses they incurred without
9    geographic limitation, there can be no question that his complaint places all business
10   expenses the entire class incurred in controversy.

11          **2.      The evidence demonstrates that Plaintiff's claims under Section**
12                 **2802 place more than $5,000,000 in controversy on their own.**

13          Plaintiff does not specifically allege all the expenses for which they believe they
14   are entitled to indemnity under Section 2802, but he does not deny in his Motion to
15   Remand that fuel, insurance, highway use tax, repairs, permits, and parts are among
16   them. Quality's settlement records indicate that, between October 3, 2015 and
17   November 9, 2019, putative class members authorized Quality to deduct a total of
18   $11,512,642.86 from their weekly settlements for fuel purchases alone. *Declaration of*
19   *Cliff Dixon* (*Dixon Decl.*), ¶ 8, attached as **Exhibit 1**. The putative class members also
20   authorized Quality to deduct a total of $135,205.00 for bobtail insurance premiums;
21   $698,669.22 for occupational-accident insurance premiums; $911,722.23 for physical
22   damage insurance premiums; $56,983.34 for 24 hour disability coverage insurance
23   premiums; $39,355.24 for PrePass service fees; $179,799.00 for communication
24   charges; $9,646.24 for highway use taxes; $506,024.78 for International Registration
25   Plan license deductions; $20,280.38 for permits; $272,442.33 for repairs; and
26   $439,317.25 for tires, for a total deduction value of $14,782,087.87. *Id.* This total
27   amount places well over $5,000,000 in controversy.

28          In *LaCross v. Knight Transportation, Inc.*, the Ninth Circuit endorsed using

                                                14

assumptions and extrapolation to determine the total amount of fuel drivers purchased in the context of very similar Section 2802 allegations. *See* 775 F.3d 1202. Here, Quality does not make any assumptions; instead, it simply pulled the total amount of the expenses itemized above that it processed for the putative class over the class period from its regularly maintained business records. Consequently, these expenses alone place the amount in controversy well over the jurisdictional limit.

Even if the Court accepts Plaintiff's argument that for the purpose of determining the amount in controversy, the Court may only consider all deductions (regardless of geographic location) for California residents, the $5,000,000 threshold is still met. *See Pl.'s Mem. in Supp. of Mot. to Remand* at 15:16-23, ECF No. 17-1. Specifically, the putative class is comprised of approximately 118 Contractors.[2] *Dixon Decl.*, ¶ 5. Of those Contractors, approximately 106 are California residents as determined by their mailing addresses. *Id.* Consequently, approximately 89% of the putative class are California residents, and according to Plaintiff's argument, Quality can include all their deducted expenses in the amount in controversy. *See Pl.'s Mem. in Supp. of Mot. to Remand* at 15:16-23, ECF No. 17-1. Eighty-nine percent of over $14,000,000 in deductions is well over the $5,000,000 amount in controversy threshold.[3] Finally, between October 3, 2015 and November 16, 2015, approximately 64% of the miles run by trucks that putative class members operated at some point during that same time period were in California. *Dixon Decl.*, ¶ 9. Pro-rating the total deductions by this percentage still places the amount in controversy over $5,000,000. No matter how

---

[2] In the Notice of Removal Quality listed the total number of putative class members as approximately 186. This number was drawn from the number of Contractors who performed work for one of Quality's independently owned affiliated terminals in California who received a settlement sheet during the relevant time period. Load records reflect that the number of Contractors who actually performed work during that time period is 118. *Dixon Decl.*, ¶ 6.

[3] In the meet and confer process, Quality provided this information to Plaintiff and offered to formalize it in a declaration. Despite still having a week before his deadline to file a motion to remand passed, Plaintiff chose to file his motion prior to receiving the evidence that Quality offered to provide. *See Declaration of E. Ashley Paynter*, ¶ 1, Ex. A, attached as **Exhibit 2**.

1  Plaintiff slices it, the amount in controversy threshold is met.

2  **IV.    CONCLUSION**

3        Quality's Notice of Removal was timely and the amount in controversy is met.

4  Accordingly, Defendants, Quality Carriers, Inc. and Quality Distribution, Inc.,

5  respectfully request that the Court grant deny Plaintiff's Motion to Remand to Los

6  Angeles Superior Court.

7

8   Dated: February 14, 2020                      Respectfully submitted,

9                                                 */s/ Christopher J. Eckhart*
                                                  Christopher J. Eckhart
10

11                                                Attorney for Defendants,
                                                  Quality Carriers, Inc. and Quality
12  4844-8134-5204, v. 5                          Distribution, Inc.