Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700
F: 626-795-4790

Christopher J. Eckhart (SBN 331414)
ceckhart@scopelitis.com
E. Ashley Paynter (SBN 333428)
apaynter@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777
F: 317-687-2414

Attorneys for Defendants,
Quality Carriers, Inc. and Quality Distribution, Inc.

(additional counsel listed on next page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON SALTER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUALITY CARRIERS, INC., an Illinois Corporation; QUALITY DISTRIBUTION, INC., a Florida Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-00479-JFW-JPR<br><br>Assigned to the Honorable John F. Walter<br><br>**DECLARATION OF DON BENOIT** |

Jared S. Kramer, admitted *Pro Hac Vice*
jskramer@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
P: 312-255-7200
F: 312-422-1224

Andrew R. Brehm, admitted *Pro Hac Vice*
abrehm@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
330 E. Kilbourn Avenue, Suite 827
Milwaukee, WI 53202
P: 414-219-8500
F: 414-278-0618

Attorneys for Defendants,
Quality Carriers, Inc. and Quality Distribution, Inc.

I, Don Benoit, declare and state the following:

1.     I am the Vice President of Operations for Quality Carriers, Inc. (Quality) and have held this position since 2012. I am submitting this Declaration in support of the Defendants' Motion for Partial Summary Judgment in the above-captioned matter.

2.     Unless otherwise indicated, the following facts are based upon my personal knowledge and my understanding and review of company practices and records. If called as a witness in this proceeding, I would be competent to testify regarding the same.

3.     Quality is a for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration (FMCSA), an agency of the U.S. Department of Transportation (DOT), to provide transportation services to the shipping public nationwide.

4.     Prior to its acquisition by CSX Corporation on July 1, 2021, Quality was a subsidiary of Quality Distribution, Inc. (Quality Distribution), which operated as a holding company and did not have any employees, equipment, or customers.

5.     Since 2008, Quality has not had any employees or operated any facilities in California. Instead, Quality has contracted with a separate company, Winsome Enterprises, Inc. (Winsome), to coordinate and manage the transportation of Quality's customers' freight throughout California.

6.     Quality and Winsome have never shared any common ownership or employees. Quality Distribution and Winsome have also never shared any common ownership or employees.

7.     Through my years of experience working at Quality and in the trucking industry in general, I have become familiar with certain DOT rules and regulations, including what is known as the Federal Leasing Regulations. Under federal law, any company or individual that transports interstate freight for hire must obtain operating authority from the DOT. Alternatively, a company or individual can operate trucks

under a different company's DOT operating authority under a written contract. The contents of the written contract between the company or the individual on the one hand, and the company with the operating authority on the other hand, are governed by the Federal Leasing Regulations.

8.     Winsome does not have its own federal operating authority. To conduct its business of transporting freight for Quality's customers with Winsome's trucks, Winsome leases its trucks to Quality so that the trucks may operate under Quality's operating authority. Nevertheless, Winsome maintains responsibility for dispatching those trucks.

9.     In return for the services Winsome provides, Quality pays Winsome a portion of the amounts charged to customers and additionally provides back-office settlement processing services from Quality's headquarters in Tampa, Florida.

10.     Quality also contracts with independent contractor drivers (Contractors), like Clayton Salter, the plaintiff in this action, to deliver product on behalf of its customers throughout California. These Contractors must be qualified to operate a Commercial Motor Vehicle under regulations promulgated by the Federal Motor Carrier Safety Administration. In addition, as required by the Federal Leasing Regulations, the Contractors contract with Quality to operate under Quality's operating authority. They sign Independent Contractor Agreements (Agreements), which set forth the terms under which they agree to provide the equipment (i.e., a Commercial Motor Vehicle) and a DOT-qualified driver in order to provide transportation services.

11.     Between October 3, 2015, and the present, Quality used three different forms of its Agreement.

12.     As the Vice President of Operations for Quality, I am familiar with its record-keeping practices. I know that it is the regular practice to make and keep exact copies of the Agreements entered by Quality with Contractors in the ordinary course of its business. Those records are made and kept at or near the time that the

1    Agreements are entered.

2    13.    Plaintiff, Clayton Salter, was employed by Quality as an employee

3    driver for approximately six months beginning in 2007 and ending in 2008 when

4    Quality withdrew its involvement in California operations and contracted with

5    Winsome for it to provide services to Quality's California customers.

6    14.    From March of 2015 through December of 2019, Mr. Salter contracted

7    directly with Quality as a Contractor under the terms of three different Agreements

8    he executed during that time period.

9    15.    Based on my review of Quality's business records, Mr. Salter executed

10   each of the three versions of the Agreement Quality used during the time period

11   between March of 2015 and the present.

12   16.    A true and accurate copy of the first version of the Agreement, which

13   Mr. Salter entered on March 3, 2015, is attached as Exhibit 3.

14   17.    A true and accurate copy of the second version of the Agreement, which

15   Mr. Salter entered on October 11, 2016, is attached as Exhibit 4.

16   18.    A true and accurate copy of the third version of the Agreement, which

17   Plaintiff entered on June 21, 2018, is attached as Exhibit 5.

18   19.    During the time that Mr. Salter was under contract with Quality, Quality

19   did not hold any meetings that were attended by Contractors, such as Mr. Salter.

20   20.    In 2019, Quality learned that Mr. Salter no longer had the equipment

21   identified in his then-current Agreement because Winsome had repossessed Mr.

22   Salter's truck. Quality then terminated Mr. Salter's Agreement in accordance with its

23   terms.

24

25

26

27

28

3

1      I declare under penalty of perjury under the laws of the United States of

2 America that these statements are true and accurate.

3

4

5    Dated: September **2**, 2021                _____

6                                     Don Benoit

7

8

9

10

11

12

4852-6928-6649, v. 6

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28