# EXHIBIT 3

## To Declaration of Don Benoit

## Clayton Salter's Independent Contractor Agreement
## Dated, March 3, 2015

## INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT is made and entered into this _3rd_ day of _MArcH_, 20_15_ (the "Effective Date"), by and between Quality Carriers, Inc., an Illinois corporation with its principal place of business at 4041 Park Oaks Boulevard, Suite 200, Tampa, Florida 33610 ("CARRIER") and _CLAYTON SALTER_ ("INDEPENDENT CONTRACTOR").

WHEREAS, CARRIER is a for-hire interstate motor carrier of property, registered with the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("DOT"), and INDEPENDENT CONTRACTOR is willing to lease the following commercial motor vehicles (the "Equipment") to CARRIER, and to perform personally or through others, as an independent contractor, services related to the operation of the Equipment, for the purpose of hauling bulk commodities on behalf of CARRIER:

| Year | Make | Serial No | Unit # |
|------|------|-----------|--------|
| 2007 | FREIGHTLINER | 1FUJA6CK07DZ 12901 | 73130 |
|  |  |  |  |
|  |  |  |  |

NOW, THEREFORE in consideration of the mutual covenants herein contained and pursuant to the federal leasing regulations (49 C.F.R. Part 376), CARRIER and INDEPENDENT CONTRACTOR hereby enter into this Independent Contractor Agreement, including any and all attachments and schedules (the "Agreement") as follows:

### 1. PROVISION OF EQUIPMENT AND SERVICES:

(a) INDEPENDENT CONTRACTOR represents (i) it is the owner or lessee of the Equipment within the meaning of 49 C.F.R. § 376.2(c), and that it has full authority to enter into this Agreement, (ii) that the Equipment is complete with all required equipment and accessories; and (iii) that the Equipment is in good, safe, and efficient operating condition and shall be so maintained at INDEPENDENT CONTRACTOR's expense throughout the duration of this Agreement. INDEPENDENT CONTRACTOR agrees to use the Equipment, together with all necessary labor, which INDEPENDENT CONTRACTOR shall furnish at its sole cost and expense, to transport, load, unload, and perform other transportation-related services (the "Services") on behalf of CARRIER and its customers.

(b) From the Commencement Date set forth on Schedule A until termination of this Agreement, (i) the Equipment will be identified in accordance with the requirements of 49 CFR Part 390 and with the FMCSA or any other regulatory agency ("Agency" or "Agencies") and (ii) INDEPENDENT CONTRACTOR will keep a copy of this Agreement with the Equipment. In accordance with Agency requirements, a receipt identifying the Equipment and the date and time of commencement of this Agreement will be delivered from CARRIER to INDEPENDENT CONTRACTOR on the Commencement Date, and INDEPENDENT CONTRACTOR will deliver a similar receipt to CARRIER upon termination; provided, however, that this Agreement and CARRIER's obligations thereunder shall expire upon the written notice of termination provided in Section 2 below regardless of whether INDEPENDENT CONTRACTOR submits the receipt required by this provision. Any placards identifying the Equipment shall be removed from the Equipment by INDEPENDENT CONTRACTOR and returned to CARRIER upon termination of this Agreement. If the identification is painted directly on the Equipment, INDEPENDENT CONTRACTOR will permanently cover such identification to the satisfaction of CARRIER.

(c) CARRIER does not agree to make any minimum use of the Equipment, to use the Equipment at any particular time or location, or to furnish any specified number of shipments to INDEPENDENT CONTRACTOR or to guarantee any amount of revenue to INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR is not obligated to accept any specific shipment offered by CARRIER.

(d) In the event that INDEPENDENT CONTRACTOR will not be available to provide services to CARRIER under this Agreement for any period exceeding seven calendar days, INDEPENDENT CONTRACTOR shall provide CARRIER with at least three days' advance notice of such unavailability.

### 2. TERM AND TERMINATION:

This Agreement shall remain in effect for a period of two (2) years from the Effective Date; provided, however, that either CARRIER or INDEPENDENT CONTRACTOR may terminate this Agreement prior to its expiration by giving to the other party 30 days written notice of termination. Notwithstanding the above, CARRIER may terminate this Agreement immediately upon any breach by INDEPENDENT CONTRACTOR of this Agreement. Those provisions relating to payment by INDEPENDENT CONTRACTOR to CARRIER or indemnification of CARRIER by INDEPENDENT CONTRACTOR (including, but not limited to, Sections 5, 7, 9, 10, 11, 14 and 18) shall survive the termination of this Agreement.

### 3. COMPLIANCE WITH PERTINENT LAWS, REGULATIONS, AND POLICIES BY INDEPENDENT CONTRACTOR.

(a)     Drivers. INDEPENDENT CONTRACTOR shall provide competent drivers who meet CARRIER's minimum driver qualification standards and all of the requirements of the DOT, including but not limited to, familiarity and compliance with state and federal motor carrier safety laws and regulations. The parties agree that CARRIER shall have the right to disqualify any driver provided by INDEPENDENT CONTRACTOR in the event that the driver is found to be unsafe, unqualified pursuant to federal or state law, in violation of CARRIER's minimum qualification standards, or in violation of any policies of CARRIER's customers.

(b)     Paperwork Requirements. INDEPENDENT CONTRACTOR shall submit to CARRIER, on a timely basis, all driver logs and supporting documents (including original toll receipts for CARRIER's reproduction), physical examination certificates, accident reports, maintenance and repair records for the Equipment, and any other required data, documents, and reports required by statute, regulation, or CARRIER's policy.

(c)     Shipping Documents. INDEPENDENT CONTRACTOR agrees that all bills of lading, waybills, freight bills, manifests, or other papers identifying the property carried on the Equipment shall be those of CARRIER, or as authorized by CARRIER, and shall indicate that the property transported is under the responsibility of CARRIER or a carrier with which the Equipment has been subcontracted.

(d)     Drug and Alcohol Testing. INDEPENDENT CONTRACTOR and its drivers shall, as required by 49 C.F.R. § 382.103, comply with CARRIER's Drug and Alcohol Policy, including participation in CARRIER's random drug and alcohol testing program, and any addendums or revisions thereto.

(e)     Safe Operations. INDEPENDENT CONTRACTOR agrees to operate the Equipment in a safe and prudent manner at all times in accordance with the laws of the various jurisdictions in which the Equipment will be operated and pursuant to the operating authorities of CARRIER, and in accordance with all rules related to traffic safety, highway protection and road requirements. Moreover, INDEPENDENT CONTRACTOR agrees that all drivers and/or workers employed by INDEPENDENT CONTRACTOR will comply with the terms of this Agreement, including the requirement of safe operations, while operating the Equipment on behalf of INDEPENDENT CONTRACTOR.

2

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 3 of 27

QC003985

(f)    Safety and Operating Policies and Procedures.    INDEPENDENT CONTRACTOR agrees that any driver utilized by INDEPENDENT CONTRACTOR will comply with CARRIER's safety and operating policies and procedures and any subsequent revisions thereto, including, but not limited to, CARRIER's Anti-Drug and Alcohol Policy set forth on    Schedule B.    INDEPENDENT CONTRACTOR acknowledges that it has read, and is familiar with, CARRIER's current applicable safety and operating policies, which are posted and maintained on CARRIER's website www.qualiltydistribution.com and are also available from CARRIER in written form upon request.

### 4. COMPENSATION:

(a) CARRIER agrees to pay and INDEPENDENT CONTRACTOR agrees to accept as full and complete payment for use of the Equipment and for performance of the Services, compensation as set forth on Schedule A hereof, as amended from time to time.  If INDEPENDENT CONTRACTOR's compensation is based upon a percentage of the revenue for a particular shipment, CARRIER agrees to provide INDEPENDENT CONTRACTOR, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information.  In addition, INDEPENDENT CONTRACTOR shall have the right to examine copies of CARRIER's tariffs, freight bills, or other documents to the extent needed to confirm compensation owed to INDEPENDENT CONTRACTOR; provided, however, that CARRIER may delete the names of shippers and consignees, and other confidential or proprietary information, contained in such documents.  CARRIER shall complete a preliminary settlement with INDEPENDENT CONTRACTOR following each trip within fifteen days of the submission by the INDEPENDENT CONTRACTOR of driver's logs and other documents required to be submitted under Agency Regulations, and such other documents as may be necessary for CARRIER to secure payment from its customer (including, but not limited to, signed delivery receipts, bills of lading, and freight bills).

(b) Where CARRIER's tariff or other agreements with its customers require that accessorial services, including, but not limited to, loading and/or unloading, be performed by CARRIER, INDEPENDENT CONTRACTOR shall perform such services for compensation as specified in Schedule A.

(c) With respect to final settlement upon termination of this Agreement, the failure on the part of INDEPENDENT CONTRACTOR to remove and return to CARRIER all identification devices of CARRIER or a letter certifying their removal shall entitle CARRIER to withhold any payments owed to INDEPENDENT CONTRACTOR, including any escrow funds, until such obligation is met.

### 5. CHARGE BACKS:
(a) CARRIER shall charge back to INDEPENDENT CONTRACTOR at the time of payment or settlement, any liability or expense CARRIER has incurred or paid that, under this Agreement or any addendum to this Agreement, INDEPENDENT CONTRACTOR is obligated to bear.  Such expenses shall be deducted from the amount of INDEPENDENT CONTRACTOR's compensation and shall include those expenses set forth in Schedule A of this Agreement.  The amount of each item to be charged back to INDEPENDENT CONTRACTOR may include an administrative fee or mark-up over and above the actual cost or expense incurred by CARRIER.  CARRIER shall provide INDEPENDENT CONTRACTOR written itemization and documentation of all charge backs where such documentation is necessary to verify the validity of the charge.

(b) CARRIER shall be authorized to deduct the amount of such advance or other amount due to CARRIER from the Escrow Fund described in Section 25 of this Agreement. In addition, CARRIER shall be entitled to deduct a $5.00 administrative fee for each advance from CARRIER to INDEPENDENT CONTRACTOR. If monies in the Escrow Fund shall be insufficient to cover the sum due CARRIER from INDEPENDENT CONTRACTOR, then INDEPENDENT CONTRACTOR will on demand pay to CARRIER all sums remaining due CARRIER. CARRIER shall furnish INDEPENDENT CONTRACTOR a written explanation and itemization of each such deduction and payment.

3

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 4 of 27

QC003986

6. **POSSESSION AND CONTROL OF EQUIPMENT:** As required by Agency regulations, CARRIER shall have exclusive possession, control and use of the Equipment, and shall assume complete responsibility for the operation of the Equipment for the duration of this Agreement. Notwithstanding the above, CARRIER and INDEPENDENT CONTRACTOR acknowledge that CARRIER's obligations under the immediately preceding sentence are not intended to affect whether INDEPENDENT CONTRACTOR is or is not an employee of CARRIER. It is the intention of CARRIER and of INDEPENDENT CONTRACTOR that INDEPENDENT CONTRACTOR shall remain an independent contractor and NOT an employee of CARRIER. CARRIER has no right to, and will not, control the manner nor prescribe the method used by INDEPENDENT CONTRACTOR to perform the Services.

7. **INDEPENDENT CONTRACTOR AND ITS EMPLOYEES:**

(a) INDEPENDENT CONTRACTOR, if an individual, agrees and acknowledges that it is not an employee of CARRIER and does not hereby wish to or intend to enter into an employment relationship. INDEPENDENT CONTRACTOR agrees on behalf of itself and its Employees (as defined below), never to bring or join in or permit its name to be used as a plaintiff or claimant in any action, suit, proceeding, administrative action, or cause claiming or alleging that it or its Employee is or at any time was an employee of CARRIER as a result of or arising out of the relationship created by this Agreement. INDEPENDENT CONTRACTOR represents and warrants as a material condition of this Agreement and as a material inducement to CARRIER to enter into this Agreement that INDEPENDENT CONTRACTOR understands the difference between an employee and an independent contractor and has had the opportunity to consult with counsel of its, his or her choice prior to entering into this Agreement. INDEPENDENT CONTRACTOR, agrees to indemnify and hold harmless CARRIER and CARRIER's officers, directors, parents, subsidiaries, agents, attorneys and shareholders (each an "Indemnitee" and collectively "indemnities") for any cost, fine, tax, action suit, arbitration, administrative action, claim, loss, or damage (collectively a "Claim"), now or hereafter brought against any CARRIER or any other indemnitee by or arising out of any Claim that INDEPENDENT CONTRACTOR is or was at any time an employee as a result of or arising out of the relationship created hereby.

(b) INDEPENDENT CONTRACTOR shall furnish sufficient drivers, helpers and other workers as INDEPENDENT CONTRACTOR deems necessary for the performance of the obligations of INDEPENDENT CONTRACTOR under the terms of this Agreement ("Employees"). Any and all Employees furnished by INDEPENDENT CONTRACTOR shall be an Employee of INDEPENDENT CONTRACTOR and shall be hired, directed, paid, controlled and discharged solely by INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR shall file all forms and returns and pay workers compensation and unemployment premiums and all withholding and employment taxes due to federal, state, local government agencies on account of Employees. All Employees who are drivers must be trained and qualified under Agency regulations to drive commercial motor vehicles hauling Hazardous Materials as that term is used in the Hazardous Materials Transportation Act, 119 U.S.C. § 5101 *et seq.*, as amended, and must meet CARRIER's driver qualification standards. All expenses incurred by CARRIER in qualifying an Employee will be reimbursed by INDEPENDENT CONTRACTOR.

8. **ACCIDENTS AND CLAIMS.** INDEPENDENT CONTRACTOR shall immediately report any accident or potential claim to CARRIER involving operations under this Agreement. INDEPENDENT CONTRACTOR and its drivers shall cooperate fully with CARRIER with respect to any legal action, regulatory hearing or other similar proceeding arising from the operation of the Equipment, the relationship created by this Agreement or the services performed hereunder. INDEPENDENT CONTRACTOR shall, upon CARRIER's request and at INDEPENDENT CONTRACTOR's sole expense, provide written reports or affidavits, attend hearings and trials and assist in securing evidence or obtaining the attendance of witnesses. INDEPENDENT CONTRACTOR shall provide CARRIER with any assistance as may be necessary for CARRIER or CARRIER's representatives or insurers to investigate, settle or litigate any accident, claim or potential claim by or against CARRIER.

4

QC003987

## 9. CARGO CLAIMS

INDEPENDENT CONTRACTOR agrees that cargo tendered to INDEPENDENT CONTRACTOR shall be delivered to the consignee with reasonable diligence, speed and care. INDEPENDENT CONTRACTOR shall be responsible for any claims resulting from cargo loss, damage, delays or shortages, occurring while such cargo is under INDEPENDENT CONTRACTOR's care, custody or control to the extent that CARRIER is responsible for such loss, damage or delay under the terms of any applicable tariff or agreement. If the loss, damage or delay is covered by CARRIER's cargo insurance policy, INDEPENDENT CONTRACTOR's liability for such claim will be limited to $1,000 per occurrence; provided, however, that any loss, damage, or claim arising from INDEPENDENT CONTRACTOR's gross negligence or intentional misconduct, as determined by CARRIER in its reasonable discretion, shall be the complete and total responsibility of INDEPENDENT CONTRACTOR. CARRIER will provide INDEPENDENT CONTRACTOR with a written explanation and itemization of any deduction for cargo loss or damage or delays in transportation made from any compensation or trip settlement owed to INDEPENDENT CONTRACTOR at or before the time of deduction.

## 10. OTHER CLAIMS / DAMAGES:

INDEPENDENT CONTRACTOR shall be liable for the first $2,000 of any loss, damage, or claim (other than the types of losses, damages, and claims addressed in Sections 9 and 18 of this Agreement) arising from INDEPENDENT CONTRACTOR's performance under this Agreement; provided, however, that any loss, damage, or claim arising from INDEPENDENT CONTRACTOR's gross negligence or intentional misconduct shall be the complete and total responsibility of INDEPENDENT CONTRACTOR.

## 11. COSTS OF OPERATION:

Except as otherwise specifically provided in this Agreement, INDEPENDENT CONTRACTOR shall furnish, provide and pay all costs of operation of the Equipment, including but not limited to:

(a) Preventive maintenance and repair, fuel, and other operating parts and supplies with respect to the Equipment.

(b) All expenses with respect to the Employees, including, but not limited to, wages, benefits and federal and state taxes (including, but not limited to, estimated federal social security, state and federal income, and state unemployment compensation taxes). INDEPENDENT CONTRACTOR expressly acknowledges that it is not covered by CARRIER's unemployment compensation coverage, and that the social security taxes to be paid by INDEPENDENT CONTRACTOR are higher than the social security taxes that it would pay if INDEPENDENT CONTRACTOR were CARRIER's employee.

(c) All ferry, bridge and highway tolls.

(d) Base plates, including apportioned or prorated base plates, fuel permits, fuel taxes and fuel tax reporting and all other permits required to operate the Equipment.

(e) Fines and penalties arising out of the operation of the Equipment. INDEPENDENT CONTRACTOR shall have the duty to determine whether a load is in compliance with the size and weight laws of all states through which the Equipment will travel and to notify CARRIER of the need for any overweight/overdimension permits before commencing the haul. CARRIER will provide for any overweight/overdimension permits where required. Except when a violation results from the acts or omissions of INDEPENDENT CONTRACTOR, CARRIER will assume the risks and costs of fines for overweight of oversize trailers when the trailer is preloaded or sealed, or the load is containerized, or when the trailer or lading is otherwise outside the control of INDEPENDENT CONTRACTOR.

## 12. PASSENGERS:

As required by 49 C.F.R. § 392.60, INDEPENDENT CONTRACTOR shall not allow any passenger to ride in the Equipment unless authorized in advance in writing by CARRIER's Vice President of Safety.

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 6 of 27

QC003988

13. **INSURANCE**: The respective obligations of the parties for providing insurance coverage for the respective operation shall be as set forth in Schedule C.

14. **INDEMNIFICATION**

: INDEPENDENT CONTRACTOR will indemnify, defend and save harmless CARRIER from and against (i) any and all claims brought against CARRIER and any and all liabilities incurred by CARRIER for or on account of bodily injury or property damage in manner caused by, incident to or growing out of any act or omission of INDEPENDENT CONTRACTOR or any Employee in connection with this Agreement or the use or operation of the Equipment; (ii) any loss or damage to property or merchandise tendered to INDEPENDENT CONTRACTOR in connection with the Services; (iii) any loss or damage to CARRIER as a result of INDEPENDENT CONTRACTOR's failure to perform obligations under this Agreement; (iv) any claims brought against CARRIER arising out of breaches or alleged breaches of agreements between INDEPENDENT CONTRACTOR and any third parties (including, but not limited to, Employees); and (v) any claims brought against CARRIER by an Employee or government agency related to work-related accidents, workers compensation claims, withholding and unemployment taxes or any other actions arising out of the relationship between INDEPENDENT CONTRACTOR and an Employee. Except as otherwise specifically provided in this Agreement, INDEPENDENT CONTRACTOR will not be obligated to indemnify CARRIER to the extent that CARRIER recovers for loss or damage under insurance policies provided under this Agreement.

15. **FUEL PURCHASES:**

(a) For the purpose of computing and paying all state fuel taxes owed for the Equipment, CARRIER shall issue to INDEPENDENT CONTRACTOR a fuel card that INDEPENDENT CONTRACTOR may use for all fuel purchases; provided, however, that INDEPENDENT CONTRACTOR shall use the fuel card only for fuel purchases made in connection with INDEPENDENT CONTRACTOR's provision of services under this Agreement. All fuel charges and state fuel taxes will be charged back to INDEPENDENT CONTRACTOR, together with any transaction fees assessed by the fuel card provider.

(b) CARRIER shall report and pay all quarterly fuel taxes on behalf of INDEPENDENT CONTRACTOR, and INDEPENDENT CONTRACTOR agrees to cooperate fully with CARRIER by providing CARRIER with all necessary information and documentation needed to complete such filings. Any net fuel or mileage tax owed at that time with respect to INDEPENDENT CONTRACTOR's operations in all taxing jurisdictions combined will be deducted from INDEPENDENT CONTRACTOR's compensation at the next settlement. Any net fuel or mileage tax credits or refunds due INDEPENDENT CONTRACTOR with respect to INDEPENDENT CONTRACTOR's operations will be credited to INDEPENDENT CONTRACTOR at the next settlement.

(c) In the event that INDEPENDENT CONTRACTOR declines to use CARRIER's fuel card, INDEPENDENT CONTRACTOR must provide CARRIER with either:

(i) Evidence reasonably satisfactory to CARRIER that INDEPENDENT CONTRACTOR has timely filed all required tax returns and other filings related to fuel taxes, and paid in full any fuel taxes due; or

(ii) An accurate accounting of all fuel purchases (including original fuel receipts) and miles traveled for the purposes of computing state fuel tax liability. In such event, CARRIER shall be entitled to collect a quarterly administrative fee of $100.00 from INDEPENDENT CONTRACTOR to compensate CARRIER for the work involved in calculating applicable fuel taxes and preparing associated filings.

6

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 7 of 27

QC003989

This administrative fee will be deducted from INDEPENDENT CONTRACTOR's compensation at the next settlement.

16. **PURCHASES OR LEASES FROM CARRIER:** INDEPENDENT CONTRACTOR is not required to purchase or lease any products, equipment or services from CARRIER as a condition of entering into this Agreement. However, if INDEPENDENT CONTRACTOR chooses to purchase or lease products, equipment or services from Carrier and authorize CARRIER to make corresponding deductions from INDEPENDENT CONTRACTOR's settlement compensation, the terms of such purchase or lease shall be specified in a separate agreement(s).

17. **COMMUNICATIONS EQUIPMENT:** INDEPENDENT CONTRACTOR agrees to make all arrangements to obtain (and install, if applicable), at INDEPENDENT CONTRACTOR's sole expense, a communications system or satellite-tracking device ("Communications Equipment") for Equipment leased to CARRIER under this Agreement. Such Communications Equipment must be compatible with the communications / satellite tracking system utilized by CARRIER.

18. **CARRIER FURNISHED TRAILERS** CARRIER, may from time to time, provide CARRIER-furnished trailer, or interchanged trailer/container equipment under a valid interchange agreement, and necessary accessories (the "CARRIER Trailers or Trailer") to INDEPENDENT CONTRACTOR in order to perform the Services. INDEPENDENT CONTRACTOR will assume responsibility, up to a maximum of $2,000 per occurrence, for loss or damage to any CARRIER Trailer which may occur while the CARRIER Trailer is in the care, custody and control of INDEPENDENT CONTRACTOR; provided, however, that any loss, damage, or claim arising from INDEPENDENT CONTRACTOR's gross negligence or intentional misconduct, as determined by CARRIER in its reasonable discretion, shall be the complete and total responsibility of INDEPENDENT CONTRACTOR. In addition, INDEPENDENT CONTRACTOR will assume full responsibility for repairs or improvements (including tires) made to the CARRIER Trailer without the written consent of CARRIER. INDEPENDENT CONTRACTOR will return the CARRIER Trailer in the same condition as when received, reasonable wear and tear excepted. INDEPENDENT CONTRACTOR agrees that if CARRIER deems it necessary to enter upon private property to obtain possession of and return the CARRIER Trailer, INDEPENDENT CONTRACTOR does hereby irrevocably grant CARRIER, or CARRIER's duly authorized agents, permission to do so and further agrees to save and hold harmless CARRIER, or CARRIER's duly authorized agents, from any form of liability whatsoever in connection therewith.

19. **TANK WASHES:** INDEPENDENT CONTRACTOR will not have CARRIER Trailers washed, either externally or internally, unless required to do so by CARRIER, and will only have CARRIER Trailers washed at facilities pre-approved by CARRIER. CARRIER will pay one hundred percent of authorized tank wash charges for CARRIER Trailers.

20. **PRODUCT DISPOSAL:** INDEPENDENT CONTRACTOR shall be responsible for ensuring that the entire product is unloaded at the consignee's facility. Unless specifically directed otherwise by CARRIER or CARRIER's agent, INDEPENDENT CONTRACTOR agrees to pay one hundred percent of all charges assessed by any tank wash facility, as a result of disposing of product in all instances where the amount of product in the tank exceeds three gallons.

21. **SEVERABILITY AND SAVINGS:**
If any individual term or provision of this Agreement is contrary to or in conflict with any requirement of applicable law, then that term or provision shall be severed from this Agreement and the remainder of this Agreement shall be binding on the Parties.

22. **BREACH:**
As set forth in Paragraph 2 above, CARRIER may terminate this Agreement immediately upon any breach of this Agreement by INDEPENDENT CONTRACTOR. In addition, violations of CARRIER

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 8 of 27

QC003990

policies, as described in Schedule B, will result in immediate termination of this Agreement. If, in CARRIER's reasonable judgment, INDEPENDENT CONTRACTOR has subjected CARRIER to liability because of INDEPENDENT CONTRACTOR's acts or omissions, CARRIER may take possession of the lading entrusted to INDEPENDENT CONTRACTOR and complete performance. In such event, INDEPENDENT CONTRACTOR shall waive any recourse against CARRIER for such action and INDEPENDENT CONTRACTOR shall reimburse CARRIER for all direct or indirect costs, expenses, or damages (including reasonable attorney's fees) incurred by CARRIER as a result of CARRIER's taking possession of the lading and completing performance.

### 23. SUCCESSORSHIP; ASSIGNMENT:

This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto. CARRIER shall have the right to assign this Agreement at any time without INDEPENDENT CONTRACTOR's consent. INDEPENDENT CONTRACTOR shall not have the right to assign this Agreement without CARRIER's prior written consent, which consent may be granted or withheld at CARRIER's sole discretion.

### 24. APPLICABLE LAW; VENUE; WAIVERS:

CARRIER and INDEPENDENT CONTRACTOR understand and agree that this Agreement shall be governed by and construed under the laws of the State of Florida, without regard to the choice of law provisions thereof. The exclusive venue for any action arising from, or brought to enforce, this Agreement shall be Hillsborough County, Florida and the state and federal courts located therein. The parties irrevocably submit to the personal and subject matter jurisdiction of said courts. INDEPENDENT CONTRACTOR waives its right to a jury trial to resolve any lawsuit it may ever bring against CARRIER, and agrees that any such lawsuit will be tried by a judge without a jury. INDEPENDENT CONTRACTOR also waives its right to participate as a member in any class action lawsuit against CARRIER or act as a representative of a class of similarly situated persons in any lawsuit against CARRIER.

### 25. ESCROW FUND:

INDEPENDENT CONTRACTOR will maintain an Escrow Fund with CARRIER in the amount of $3,000.00.

(a)     INDEPENDENT CONTRACTOR may, at its option (a) deposit the Escrow Fund with CARRIER in cash at the Commencement Date, or (b) authorize CARRIER to deduct from INDEPENDENT CONTRACTOR's settlement $50.00 per Settlement Period until the full Escrow Fund has been deposited. CARRIER may draw upon the Escrow Fund for the purpose of settling amounts that INDEPENDENT CONTRACTOR owes CARRIER under this Agreement, including, but not limited to, any expense incurred by CARRIER that is INDEPENDENT CONTRACTOR's responsibility under this Agreement. CARRIER will describe each transaction involving the Escrow Fund in writing to INDEPENDENT CONTRACTOR. Amounts withdrawn from the Escrow Fund will be replaced by INDEPENDENT CONTRACTOR within fifteen days after INDEPENDENT CONTRACTOR's receipt of such written notice. If such amounts are not replaced by INDEPENDENT CONTRACTOR, CARRIER will have the right to withhold such amounts from INDEPENDENT CONTRACTOR's settlement (up to $50.00 per Settlement Period) until the full Escrow Fund has been deposited. INDEPENDENT CONTRACTOR may request an accounting of the Escrow Fund in writing at any time, and such accounting will be provided within seven days from CARRIER's receipt of that request.

(b)     If INDEPENDENT CONTRACTOR leases more than one tractor under this Agreement, INDEPENDENT CONTRACTOR will maintain an additional amount of $1,000.00 in the Escrow Fund for each additional tractor, which amount is to be deducted from INDEPENDENT CONTRACTOR's compensation at $50.00 every week beginning on the second week of services provided by INDEPENDENT CONTRACTOR under the Agreement. If, at any time, the principal amount in escrow falls below $3,000.00 plus the additional $1000.00 for each additional tractor, INDEPENDENT

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 9 of 27

QC003991

CONTRACTOR authorizes CARRIER to deduct from INDEPENDENT CONTRACTOR's compensation a maximum amount of $50.00 per week per tractor until the full escrow amount is replenished.

(c)     While the Escrow Fund is in the control of CARRIER, CARRIER will pay interest on the average daily balance of Escrow Fund on at least a quarterly basis at a rate equal to the average yield on 91-day, 13-week treasury bills, as established in the weekly auction by the U. S. Department of Treasury, determined on the first day of the calendar quarter for which such interest payment is made. For purposes of calculating the balance of the Escrow Fund on which interest will be paid, CARRIER may, at its election, first deduct a sum equal to the average advance (including all chargebacks and other deductions) made to INDEPENDENT CONTRACTOR during the period of time for which interest is paid.

(d)     Final settlement of the Escrow Fund will be made upon the removal of placards and logos from the Equipment by INDEPENDENT CONTRACTOR, and the return of the placards and logos and all other property of CARRIER that INDEPENDENT CONTRACTOR may have, but in no event later than 45 days from the termination of this Agreement. Disbursement of the Escrow Fund will be accompanied by an accounting of all final deductions. If the Escrow Fund is insufficient to satisfy INDEPENDENT CONTRACTOR's outstanding obligations to CARRIER, INDEPENDENT CONTRACTOR shall pay CARRIER in full upon thirty days' written notice from CARRIER. If INDEPENDENT CONTRACTOR fails to timely comply with such notice, CARRIER shall be entitled to charge INDEPENDENT CONTRACTOR a monthly late fee equal to the lesser of 1.5% of the outstanding balance or the maximum amount allowed by law. In addition, INDEPENDENT CONTRACTOR shall be liable for any and all costs and expenses incurred by CARRIER in collecting INDEPENDENT CONTRACTOR's unpaid debt, including, but not limited to, collection agent and attorneys' fees.

26. **CONFIDENTIALITY:** All information, including, but not limited to, customer lists, trade secrets, forms, processes, developments, sales and promotional systems, prices and operations, which is disclosed to INDEPENDENT CONTRACTOR or which INDEPENDENT CONTRACTOR observes or comes into contact with during the term of this Agreement or the rendition of any services to CARRIER, whether generated by CARRIER or a customer or contractor of CARRIER, shall be deemed "Confidential Information" and the sole and exclusive property of CARRIER. INDEPENDENT CONTRACTOR shall take all reasonable measures to maintain the confidentiality of said Confidential Information. INDEPENDENT CONTRACTOR shall not use the Confidential Information for any purposes other than to perform its obligations under this Agreement and shall not disclose any Confidential Information to any third party without CARRIER's prior written consent. INDEPENDENT CONTRACTOR acknowledges that all right, title, and interest in and to Confidential Information, including the right to produce, extract, or exhibit to any third party, and any intellectual property rights, are vested exclusively in CARRIER. INDEPENDENT CONTRACTOR shall return any Confidential Information in its possession or control promptly upon the termination of this Agreement, INDEPENDENT CONTRACTOR expressly agrees that CARRIER shall be entitled to an injunction in any court of competent jurisdiction to prevent or otherwise restrain a breach of this Section. Nothing in this Section shall be construed as prohibiting CARRIER from pursuing any remedies available to CARRIER at law or in equity for such breach, including the recovery of monetary damages from INDEPENDENT CONTRACTOR.

27. **ENTIRE AGREEMENT; NO WAIVER:**
This Agreement, together with all schedules and attachments, constitutes the sole and entire agreement between the parties and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term. This Agreement may not be amended or changed except by written agreement signed by CARRIER and INDEPENDENT CONTRACTOR. Either party's failure to insist upon strict performance of any provision of this Agreement or exercise any right under this Agreement shall not be construed as a waiver of such

Defendants' Motion for Partial Summary Judgment Exhibit 3
Page  10 of 27

QC003992

provision or right, nor shall such failure excuse the other party from future performance.

28. **LANGUAGE:**
The use of any gender in this Agreement shall include all other genders and the singular shall include the plural and the plural shall include the singular. The headings herein are for convenience only and shall not be construed as interpretive or as a substantive part of this Agreement.

29. **NOTICES:** All notices under this Agreement shall be in writing and effective when delivered in person, by certified or registered mail (return receipt requested), or by prepaid express delivery service to the relevant undersigned party at its address provided below, or at such other address as such party may from time to time specify in writing.

**IN WITNESS WHEREOF**, CARRIER and INDEPENDENT CONTRACTOR hereby sign this Independent Contractor Agreement as of the date first stated above.

AGREED:

| CARRIER: Quality Carriers, Inc. | Independent Contractor |
|---|---|
| By: _Janet Daigle_ | By: |
| Name Printed: Janet Daigle | Name Printed: CLAYTON SALTER |
| Title: License & Permit Coordinator | Title: OWNER OPERATOR |
| Address: 4041 Park Oaks Boulevard, Suite 200, Tampa, Florida 33610 | Address: 6764 ORIZABA AVE. LONG BEACH. CA 90805 |
| | Phone: (562) 529-7999 |
| | Cell Phone: |
| | FEIN/SSN: 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 |

10

QC003993

## SCHEDULE A
## COMPENSATION

This Schedule A is attached to and made a part of the Independent Contractor Agreement dated as of _March 3_, 20_15_ ("Agreement") by and between Quality Carriers, Inc. ("CARRIER") and _____ CLAYTON SALTER ("INDEPENDENT . CONTRACTOR").

1. <u>TERM:</u> This Schedule A shall be effective beginning _March 3_, 20_15_ (the "Commencement Date") described in Section 2(c) of the Agreement and shall continue in effect throughout the term of the Agreement, unless amended or revised by both parties in writing.

2. <u>COMPENSATION METHODS:</u> CARRIER agrees to compensate INDEPENDENT CONTRACTOR for carriage of loads tendered by CARRIER by utilizing the PERCENTAGE BASED method set forth in Schedule A-1, which is attached to and made a part of this Schedule A. Any exceptions to the compensation rate set forth in Schedule A-1 are set forth in Schedule A-2, which is attached to and made a part of this Schedule A.

3. <u>FUEL SURCHARGE:</u> INDEPENDENT CONTRACTOR's compensation shall not include any Fuel Surcharge (or portion thereof) billed to, or collected from, CARRIER's customers.

4. <u>FUEL STABILIZATION:</u> CARRIER shall provide additional compensation to INDEPENDENT CONTRACTOR for fuel costs in excess of $1.25 per gallon based on the following:

   a. Fuel stabilization compensation ("FSC") shall be provided by CARRIER to INDEPENDENT CONTRACTOR when National Average Diesel Fuel Prices ("NADFP") are in excess of $1.25 per gallon.
   b. FSC will be paid for all approved dispatched "Practical Miles" (as defined by the most recent edition of <u>Rand McNally Practical Miles</u> in effect at the time of dispatch) recorded in the CARRIER'S dispatch system.
   c. Schedule A-3, which is attached to and made a part of this Schedule A, represents the FSC rate per approved dispatched Practical Mile for various NADFP ranges.
   d. CARRIER will notify INDEPENDENT CONTRACTOR of changes to the NADFP via electronic communication or via published report on CARRIER'S website (www.qualitydistribution.com).
   e. CARRIER reserves the right to modify Schedule A-3 from time-to-time, and will notify INDEPENDENT CONTRACTOR of any modifications via electronic communication or via published report on CARRIER'S website (www.qualitydistribution.com).
   f. NADFP is based on the United States average retail on-highway diesel prices, as published by the Energy Information Administration, a provider of official energy statistics from the United States government.

5. <u>EXPENSES:</u> Expense items, including, but not limited to, scale tickets and tolls that are incurred by INDEPENDENT CONTRACTOR and billed to and collected from a customer separately by CARRIER will be paid to INDEPENDENT CONTRACTOR at a rate of 100%. INDEPENDENT CONTRACTOR must provide documentation of expense items to receive

11

QC003994

reimbursement.

6. <u>DEDUCTIONS:</u> In addition to any other items specified in this Agreement, CARRIER shall have the right to deduct the following items from INDEPENDENT CONTRACTOR's compensation (or INDEPENDENT CONTRACTOR's Escrow Fund, if INDEPENDENT CONTRACTOR's compensation is insufficient) in order to recover costs expended on behalf of INDEPENDENT CONTRACTOR: (a) compensation advances; (b) fuel charges; (c) fuel taxes; (d) IRP plate; (e) cargo, trailer damage, and other claims; (f) C.O.D. charges; (g) fines and penalties; (h) insurance costs, including the costs of obtaining and administering said insurance; (i) Escrow Fund contributions; (j) payments for equipment purchased or leased from CARRIER, if any.; (k) deductions required to be made by law (e.g., garnishments, tax liens, court-ordered child or spousal support); and (l) any other expenses or costs incurred by CARRIER for which INDEPENDENT CONTRACTOR is responsible under this Agreement. INDEPENDENT CONTRACTOR hereby waives any objection to any deduction specified in this Section or elsewhere in this Agreement unless INDEPENDENT CONTRACTOR notifies CARRIER in writing of INDEPENDENT CONTRACTOR's objection within thirty (30) days of the deduction.

7. <u>BASE PLATES:</u> If CARRIER is authorized to receive a refund or credit for base plates purchased by INDEPENDENT CONTRACTOR from, and issued in the name of CARRIER, or if base plates are authorized to be sold by CARRIER to another independent contractor, CARRIER shall refund to INDEPENDENT CONTRACTOR a prorated share of the amount received.

Accepted and agreed to this Schedule A as of ___March 3___, 20_15_, by and between the parties set forth below.

| CARRIER: Quality Carriers, Inc. | Independent Contractor |
|---|---|
| By: _Janet Daigle_ | By: _____ |
| Name Printed: Janet Daigle | Name Printed: _CLAYTON SALTER_ |
| Title: License & Permit Coordinator | Title: _OWNER OPERATOR_ |
| Date: _March 3, 2015_ | Date: _2-26-15_ |

12

## SCHEDULE A – 1

## PERCENTAGE BASED COMPENSATION

1. **PERCENTAGE BASED COMPENSATION:** For carriage of loads tendered by CARRIER, CARRIER shall pay INDEPENDENT CONTRACTOR ___62___ %OF ADJUSTED GROSS REVENUE (as defined below) ("AGR"), except as set forth in Schedule A-2 (Percentage Exceptions).

2. AGR: AGR is defined as all linehaul revenue **received\*** (see below) by CARRIER from shippers, consignees, or other carriers for commodities hauled by INDEPENDENT CONTRACTOR under this Agreement, **reduced by:** (a) any and all expenses attributed to accessorial services paid to a third party or to INDEPENDENT CONTRACTOR by CARRIER; (b) amounts paid to any third party by CARRIER in relation to movement of the load, including, but not limited to, amounts paid to other independent contractors as a pro-rata payment for their participation in the movement of a load; (c) costs incurred by CARRIER to shuttle, preload, or spot equipment; (d) amounts paid by CARRIER to interline or augmenting carriers; (e) warehouse or storage charges; (f) any revenue received by CARRIER as an excess value or insurance charge on high value shipments; (g) all incentives, rebates, discounts, or commissions given to CARRIER's customers or other third parties; (h) amounts paid or accrued for certain specialized trailers; (i) any portion of the rate or total revenue that is charged by CARRIER as an insurance surcharge, irrespective of whether such surcharge is separately expressed on any customer contract, freight bill, or other document; and (j) any portion of the rate paid by CARRIER for the cleaning of the trailer, hoses, or pumping equipment used in the execution of the movement.

> (\*CARRIER reserves the right to subsequently offset and/or deduct from INDEPENDENT CONTRACTOR'S compensation, within 180 days following preliminary settlement pursuant to Section 4(a) of the Agreement, the difference between expected linehaul revenue paid to INDEPENDENT CONTRACTOR in the preliminary settlement and actual linehaul revenue collected by CARRIER from its customer.)

3. ACCESSORIAL CHARGES: Percentages of accessorial charges, including, but not limited to, detention, scaling, loading, and unloading, shall be paid to INDEPENDENT CONTRACTOR based upon the same percentage of AGR specified in Section 1 of this Schedule A-1. INDEPENDENT CONTRACTOR must provide CARRIER with signature documentation (from the customer) of accessorial charges to receive compensation for such charges.

Accepted and agreed to this Schedule A-1 as of _March 3_, 20_15_ by and between the parties set forth below.

| CARRIER: Quality Carriers, Inc. | Independent Contractor |
|---|---|
| | |

13

| By: _Janet Daigle_ | By: |
|---|---|
| Name Printed: **Janet Daigle** | Name Printed: CLAYTON SALTER |
| Title: **License & Permit Coordinator** | Title: OWNER OPERATOR |
| Date: March 3, 2015 | Date: 2-26-15 |

14

## SCHEDULE A - 2

## PERCENTAGE EXCEPTIONS

1. <u>PERCENTAGE EXCEPTONS</u>: For the freight identified below, the CARRIER will compensate the INDEPENDENT CONTRACTOR at the percentage of AGR specified below:

| Business Description | Contract /Item Number | % of AGR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

N/A

Accepted and agreed to this Schedule A-2 as of __Maron 3__, 20__15__, by and between the parties set forth below.

| CARRIER: Quality Carriers, Inc. | Independent Contractor |
|---|---|
| By: _Jami Daigle_ | By: _____ |
| Name Printed: Janet Daigle | Name Printed: CLAUTON SALTER |
| Title: License & Permit Coordinator | Title: OWNER OPERATOR |
| Date: Maron 3, 2015 | Date: 2-26-15 |

15

## SCHEDULE A – 3

## FUEL STABILIZATION TABLE

| NADFP From | To | Paid to Owner Operator Mileage >101 Mi 5.8 MPG | Mileage 51-100 Mi 4.8 MPG | Mileage 1-50 Mi 3.8 MPG |
|---|---|---|---|---|
| $1,250 | $1,299 | $0.00 | $0.01 | $0.01 |
| $1,300 | $1,349 | $0.01 | $0.02 | $0.02 |
| $1,350 | $1,399 | $0.02 | $0.03 | $0.03 |
| $1,400 | $1,449 | $0.03 | $0.04 | $0.05 |
| $1,450 | $1,499 | $0.04 | $0.05 | $0.06 |
| $1,500 | $1,549 | $0.05 | $0.06 | $0.07 |
| $1,550 | $1,599 | $0.06 | $0.07 | $0.09 |
| $1,600 | $1,649 | $0.06 | $0.08 | $0.10 |
| $1,650 | $1,699 | $0.07 | $0.09 | $0.11 |
| $1,700 | $1,749 | $0.08 | $0.10 | $0.12 |
| $1,750 | $1,799 | $0.08 | $0.11 | $0.14 |
| $1,800 | $1,849 | $0.10 | $0.12 | $0.15 |
| $1,850 | $1,899 | $0.11 | $0.13 | $0.16 |
| $1,900 | $1,949 | $0.12 | $0.14 | $0.18 |
| $1,950 | $1,999 | $0.12 | $0.15 | $0.19 |
| $2,000 | $2,049 | $0.13 | $0.16 | $0.20 |
| $2,050 | $2,099 | $0.14 | $0.17 | $0.22 |
| $2,100 | $2,149 | $0.15 | $0.18 | $0.23 |
| $2,150 | $2,199 | $0.16 | $0.19 | $0.24 |
| $2,200 | $2,249 | $0.17 | $0.20 | $0.26 |
| $2,250 | $2,299 | $0.18 | $0.21 | $0.27 |
| $2,300 | $2,349 | $0.19 | $0.22 | $0.29 |
| $2,350 | $2,399 | $0.19 | $0.23 | $0.30 |
| $2,400 | $2,449 | $0.20 | $0.24 | $0.31 |
| $2,450 | $2,499 | $0.21 | $0.26 | $0.32 |
| $2,500 | $2,549 | $0.22 | $0.27 | $0.34 |
| $2,550 | $2,599 | $0.23 | $0.28 | $0.35 |
| $2,600 | $2,649 | $0.24 | $0.29 | $0.36 |
| $2,650 | $2,699 | $0.25 | $0.30 | $0.37 |
| $2,700 | $2,749 | $0.25 | $0.31 | $0.39 |
| $2,750 | $2,799 | $0.26 | $0.32 | $0.40 |
| $2,800 | $2,849 | $0.27 | $0.33 | $0.41 |
| $2,850 | $2,899 | $0.28 | $0.34 | $0.43 |
| $2,900 | $2,949 | $0.29 | $0.35 | $0.44 |
| $2,950 | $2,999 | $0.30 | $0.36 | $0.45 |
| $3,000 | $3,049 | $0.31 | $0.37 | $0.47 |
| $3,050 | $3,099 | $0.31 | $0.38 | $0.48 |
| $3,100 | $3,149 | $0.32 | $0.39 | $0.49 |
| $3,150 | $3,199 | $0.33 | $0.40 | $0.51 |
| $3,200 | $3,249 | $0.34 | $0.41 | $0.52 |
| $3,250 | $3,299 | $0.35 | $0.42 | $0.53 |
| $3,300 | $3,349 | $0.36 | $0.43 | $0.55 |
| $3,350 | $3,399 | $0.37 | $0.44 | $0.56 |
| $3,400 | $3,449 | $0.37 | $0.45 | $0.57 |
| $3,450 | $3,499 | $0.38 | $0.46 | $0.58 |
| $3,500 | $3,549 | $0.39 | $0.47 | $0.60 |
| $3,550 | $3,599 | $0.40 | $0.48 | $0.61 |
| $3,600 | $3,649 | $0.41 | $0.49 | $0.62 |
| $3,650 | $3,699 | $0.42 | $0.51 | $0.64 |
| $3,700 | $3,749 | $0.43 | $0.52 | $0.65 |
| $3,750 | $3,799 | $0.44 | $0.53 | $0.66 |
| $3,800 | $3,849 | $0.44 | $0.54 | $0.68 |
| $3,850 | $3,899 | $0.45 | $0.55 | $0.69 |
| $3,900 | $3,949 | $0.46 | $0.56 | $0.70 |
| $3,950 | $3,999 | $0.47 | $0.57 | $0.72 |
| $4,000 | $4,049 | $0.48 | $0.58 | $0.73 |
| $4,050 | $4,099 | $0.48 | $0.59 | $0.74 |
| $4,100 | $4,149 | $0.50 | $0.60 | $0.76 |
| $4,150 | $4,199 | $0.50 | $0.61 | $0.77 |
| $4,200 | $4,249 | $0.51 | $0.62 | $0.78 |
| $4,250 | $4,299 | $0.52 | $0.63 | $0.80 |
| $4,300 | $4,349 | $0.53 | $0.64 | $0.81 |
| $4,350 | $4,399 | $0.54 | $0.65 | $0.82 |
| $4,400 | $4,449 | $0.55 | $0.66 | $0.84 |
| $4,450 | $4,499 | $0.56 | $0.67 | $0.85 |
| $4,500 | $4,549 | $0.56 | $0.68 | $0.86 |
| $4,550 | $4,599 | $0.57 | $0.69 | $0.87 |
| $4,600 | $4,649 | $0.58 | $0.70 | $0.89 |
| $4,650 | $4,699 | $0.59 | $0.71 | $0.90 |
| $4,700 | $4,749 | $0.60 | $0.72 | $0.91 |
| $4,750 | $4,799 | $0.61 | $0.73 | $0.93 |
| $4,800 | $4,849 | $0.62 | $0.74 | $0.94 |
| $4,850 | $4,899 | $0.62 | $0.75 | $0.95 |
| $4,900 | $4,949 | $0.63 | $0.77 | $0.97 |
| $4,950 | $4,999 | $0.64 | $0.76 | $0.98 |
| $5,000 | $5,049 | $0.65 | $0.79 | $0.99 |
| $5,050 | $5,099 | $0.66 | $0.80 | $1.01 |
| $5,100 | $5,149 | $0.67 | $0.81 | $1.02 |
| $5,150 | $5,199 | $0.68 | $0.82 | $1.03 |
| $5,200 | $5,249 | $0.69 | $0.83 | $1.05 |
| $5,250 | $5,299 | $0.69 | $0.84 | $1.06 |
| $5,300 | $5,349 | $0.70 | $0.85 | $1.07 |
| $5,350 | $5,399 | $0.71 | $0.86 | $1.09 |
| $5,400 | $5,449 | $0.72 | $0.87 | $1.10 |
| $5,450 | $5,499 | $0.73 | $0.88 | $1.11 |
| $5,500 | $5,549 | $0.74 | $0.89 | $1.12 |
| $5,550 | $5,599 | $0.75 | $0.90 | $1.14 |
| $5,600 | $5,649 | $0.76 | $0.91 | $1.15 |
| $5,650 | $5,699 | $0.76 | $0.92 | $1.16 |
| $5,700 | $5,749 | $0.77 | $0.93 | $1.18 |
| $5,750 | $5,799 | $0.78 | $0.94 | $1.19 |
| $5,800 | $5,849 | $0.79 | $0.95 | $1.20 |
| $5,850 | $5,899 | $0.80 | $0.96 | $1.22 |
| $5,900 | $5,949 | $0.81 | $0.97 | $1.23 |
| $5,950 | $5,999 | $0.81 | $0.98 | $1.24 |
| $6,000 | $6,049 | $0.82 | $0.99 | $1.26 |

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 17 of 27

QC003999

## SCHEDULE B
## ANTI-DRUG AND ALCOHOL POLICY

This Schedule B is attached to and made a part of the Independent Contractor Agreement dated as of _March 3_, 2015 ("Agreement") by and between Quality Carriers, Inc. ("CARRIER") and _CLAYTON SALTER_ ("INDEPENDENT CONTRACTOR").

As required under Regulations adopted by the U.S. Department of Transportation, CARRIER has adopted a policy on the use of controlled substances and the misuse of alcohol (the "Policy") as follows:

Any Employee, helper or other worker provided by INDEPENDENT CONTRACTOR who is performing a safety sensitive function for CARRIER will be subject to testing for use of controlled substances and misuse of alcohol as required under Title 49 Part 382 of the U.S. Code of Federal Regulations ("Regulations"). Pre-employment, post-accident, random and reasonable suspicion testing will be required as provided in the Regulations.

**Independent Contractor agrees that it will comply with the terms of the Policy, as communicated to INDEPENDENT CONTRACTOR by CARRIER, with respect to any Employee who has been found to be in violation of the Regulations. Violation of the Policy by INDEPENDENT CONTRACTOR will be a default by INDEPENDENT CONTRACTOR under the Agreement requiring immediate termination of the Agreement.**

Further details concerning this Policy are available from _SAFETY_ at the offices of CARRIER.

Accepted and agreed to Schedule B as of _March 3_, 2015 by and between the parties set forth below.

CARRIER: Quality Carriers, Inc.          INDEPENDENT CONTRACTOR:

By: _Janet Daigle_                       By: _____

Name Printed: Janet Daigle               Name Printed: CLAYTON SALTER

Title: License & Permit Coordinator      Title: OWNER OPERATOR

18

QC004000

## SCHEDULE C

## INSURANCE AND ALLOCATION OF LIABILITY

1. **CARRIER'S INSURANCE OBLIGATIONS.** It shall be CARRIER's responsibility, pursuant to DOT regulations promulgated under 49 U.S.C. § 13906 and pursuant to applicable state laws, to provide public liability, property damage, and cargo liability insurance for the Equipment at all times while the Equipment is being operated on behalf of CARRIER.

2. **INDEPENDENT CONTRACTOR'S INSURANCE OBLIGATIONS.** INDEPENDENT CONTRACTOR shall maintain, at its sole cost and expense, and in form and content satisfactory to CARRIER, the following minimum insurance coverages during this Agreement:

(a) **NON-TRUCKING LIABILITY** - INDEPENDENT CONTRACTOR shall procure, carry, and maintain public liability and property damage insurance which shall provide coverage to INDEPENDENT CONTRACTOR whenever the Equipment is not being operated on behalf of CARRIER in a combined single limit of not less than One Million Dollars ($1,000,000) for injury or death to any person or for damages to property in any one occurrence. Such coverage shall be no less comprehensive than the coverage CARRIER will facilitate on INDEPENDENT CONTRACTOR's behalf if INDEPENDENT CONTRACTOR so chooses, as provided in Section 5 of this Appendix. In addition, such coverage shall be primary to any other insurance that may be available from CARRIER. INDEPENDENT CONTRACTOR shall be responsible for all deductible amounts and for any loss or damage in excess of the policy limit.

(b) **WORKERS' COMPENSATION/OCCUPATIONAL ACCIDENT INSURANCE.** INDEPENDENT CONTRACTOR shall provide workers' compensation insurance coverage for INDEPENDENT CONTRACTOR (if a natural person), all of its employees and agents, anyone driving the Equipment, and any other persons required to be covered under the worker's compensation law of any state that is reasonably likely to have jurisdiction over INDEPENDENT CONTRACTOR's business operations and in amounts not less than the statutory limits required by such applicable state law. The worker's compensation insurance policy shall provide principal coverage in Florida as well as the state in which the work is principally localized, and shall provide "other states coverage" that excludes only North Dakota, Ohio, Washington, West Virginia, and Wyoming. As evidence of such coverage, INDEPENDENT CONTRACTOR shall provide CARRIER with a copy of the insurance policy declarations page for CARRIER's verification before operating the Equipment under this Agreement. Such coverage shall be no less comprehensive than the coverage CARRIER will facilitate on INDEPENDENT CONTRACTOR's behalf if INDEPENDENT CONTRACTOR so chooses, as provided in Section 5 of this Appendix. If (a) INDEPENDENT CONTRACTOR is the sole owner and the sole and exclusive operator of the Equipment and (b) the state in which the work is principally localized is not Colorado, Nevada, New Jersey, New York, or North Carolina, then INDEPENDENT CONTRACTOR may, as an alternative to obtaining workers' compensation coverage, obtain occupational accident insurance policy that includes either an endorsement or a separate policy provision whereby the insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by INDEPENDENT CONTRACTOR alleging employee status. Such occupational accident insurance coverage shall be no less comprehensive than the coverage CARRIER will facilitate on INDEPENDENT CONTRACTOR's behalf if INDEPENDENT CONTRACTOR so chooses, as provided in Section 5 of this Appendix.

(c) **OTHER INSURANCE.** In addition to the insurance coverages required under this Agreement, it is INDEPENDENT CONTRACTOR'S responsibility to procure, carry and maintain any fire, theft, uninsured and/or underinsured motorist, and physical damage (collision), or other insurance coverage that INDEPENDENT CONTRACTOR may desire for the Equipment or for INDEPENDENT CONTRACTOR's health care or other needs. As provided in this Agreement, INDEPENDENT CONTRACTOR holds CARRIER harmless with respect to loss of or damage to INDEPENDENT

19

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 19 of 27

QC004001

CONTRACTOR'S Equipment, trailer, or other property, and CARRIER has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to INDEPENDENT CONTRACTOR's Equipment, trailer, or other property. INDEPENDENT CONTRACTOR acknowledges that CARRIER may, and INDEPENDENT CONTRACTOR hereby authorizes CARRIER to, waive and reject no-fault, uninsured, and underinsured motorist coverage from CARRIER's insurance policies to the extent allowed under Florida law (or such other state law where the Equipment is principally garaged), and INDEPENDENT CONTRACTOR shall cooperate in the completion of all necessary documentation for such waiver, election, or rejection.

3. **REQUIREMENTS APPLICABLE TO ALL OF INDEPENDENT CONTRACTOR'S INSURANCE COVERAGES.** INDEPENDENT CONTRACTOR shall procure insurance policies providing the above-described coverages solely from insurance carriers that are A.M. Best "A"-rated, and INDEPENDENT CONTRACTOR shall not operate the Equipment under this Agreement unless and until CARRIER has determined that the policies are acceptable (CARRIER's approval shall not be unreasonably withheld). INDEPENDENT CONTRACTOR shall furnish to CARRIER written certificates obtained from INDEPENDENT CONTRACTOR'S insurance carriers showing that all insurance coverages required above have been procured from A.M. Best "A" rated insurance carriers, that the coverages are being properly maintained, and that the premiums thereof are paid. Each insurance certificate shall specify the name of the insurance carrier, the policy number, and the expiration date; list CARRIER as an additional insured with primary coverage; and show that written notice of cancellation or modification of the policy shall be given to CARRIER at least thirty (30) days prior to such cancellation or modification.

4. **INDEPENDENT CONTRACTOR'S LIABILITY IF REQUIRED COVERAGES ARE NOT MAINTAINED.** In addition to INDEPENDENT CONTRACTOR's hold harmless/indemnity obligations to CARRIER under the Agreement, INDEPENDENT CONTRACTOR agrees to defend, indemnify, and hold CARRIER harmless from any direct, indirect, or consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property that CARRIER may incur arising out of or in connection with INDEPENDENT CONTRACTOR'S failure to maintain the insurance coverages required by this Agreement. In addition, INDEPENDENT CONTRACTOR, on behalf of its insurer, expressly waives all subrogation rights against CARRIER, and, in the event of a subrogation action brought by INDEPENDENT CONTRACTOR's insurer, INDEPENDENT CONTRACTOR agrees to defend, indemnify, and hold CARRIER harmless from such claim.

5. **AVAILABILITY OF INSURANCE FACILITATED BY CARRIER.** INDEPENDENT CONTRACTOR is not required to, but may, if it so chooses by initialing one or more boxes in the right-hand column of the attached "CERTIFICATE OF INSURANCE," authorize CARRIER to facilitate, on INDEPENDENT CONTRACTOR's behalf, the insurance coverages required or made optional by this Agreement. In any such case, CARRIER shall deduct, from INDEPENDENT CONTRACTOR settlement compensation, amounts reflecting all of CARRIER's expense and cost in obtaining and administering such coverage. In addition, if INDEPENDENT CONTRACTOR fails to provide proper evidence of the purchase or maintenance of the insurance required above, then CARRIER is authorized but not required to obtain such insurance at INDEPENDENT CONTRACTOR's expense and deduct, from INDEPENDENT CONTRACTOR's settlement compensation, amounts reflecting all of CARRIER's expense in obtaining and administering such coverage. INDEPENDENT CONTRACTOR recognizes that CARRIER is not in the business of selling insurance, and any insurance coverage requested by INDEPENDENT CONTRACTOR from CARRIER is subject to all of the terms, conditions, and exclusions of the actual policy issued by the insurance underwriter. CARRIER shall ensure that INDEPENDENT CONTRACTOR is provided with a certificate of insurance (as required by 49 C.F.R. § 376.12(j)(2)) for each insurance policy under which the INDEPENDENT CONTRACTOR has authorized CARRIER to facilitate insurance coverage from the insurance underwriter (each such certificate to include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to INDEPENDENT CONTRACTOR for

Defendants' Motion for Partial Summary Judgment Exhibit 3

Page 20 of 27

QC004002

each type of coverage, and the deductible amount for each type of coverage for which INDEPENDENT CONTRACTOR may be liable), and CARRIER shall provide INDEPENDENT CONTRACTOR with a copy of each policy upon request.

6. **CHANGES IN COST OR OTHER DETAILS OF COVERAGES.** If CARRIER is facilitating any insurance coverages for INDEPENDENT CONTRACTOR pursuant to Section 5 of this Appendix and the cost to INDEPENDENT CONTRACTOR for, or other details of, a coverage changes from the information listed in the attached "CERTIFICATE OF INSURANCE", INDEPENDENT CONTRACTOR will be so notified by personal delivery, fax, or other written notice. In any event, INDEPENDENT CONTRACTOR shall not be subject to any such change until ten (10) calendar days after such notice or such later time as is set forth in the notice. **INDEPENDENT CONTRACTOR's failure, by the end of ten (10) calendar days after such notice, to notify CARRIER of any objection to the change shall constitute INDEPENDENT CONTRACTOR's express consent and authorization to CARRIER to implement the change and modify accordingly the deductions from INDEPENDENT CONTRACTOR's settlement compensation, beginning immediately after the 10-day period.** Such modified amounts shall replace and supersede those shown in the Certificate of Insurance and CARRIER shall not have an obligation to also provide a revised Certificate of Insurance. If INDEPENDENT CONTRACTOR fails to notify CARRIER of any objection within the 10-day period – or if INDEPENDENT CONTRACTOR notifies CARRIER of its objection within the 10-day period and INDEPENDENT CONTRACTOR and CARRIER are then unable to resolve the matter to their mutual satisfaction – INDEPENDENT CONTRACTOR and CARRIER shall each have the right to terminate this Agreement effective immediately upon the change becoming effective (although INDEPENDENT CONTRACTOR shall remain subject to the change until INDEPENDENT CONTRACTOR's termination's effective date and time).

CARRIER: Quality Carriers, Inc.

By: _Janet Daigle_

Name Printed: Janet Daigle

Title: License & Permit Coordinator

INDEPENDENT CONTRACTOR:

By: _____

Name Printed: CLAYTON SALTER

Title: OWNER OPERATOR

21

QC004003

## COMMUNICATIONS SYSTEM / SERVICE AGREEMENT

THIS COMMUNICATIONS SYSTEM / SERVICE AGREEMENT ("Agreement") is made and entered into this _3_ day of _Marin_, 20_15_, by and between Quality Carriers, Inc., an Illinois corporation with its principal place of business at 4041 Park Oaks Boulevard, Suite 200, Tampa, Florida 33610 ("CARRIER") and _____ _Clayton Salazar_ _____ ("INDEPENDENT CONTRACTOR").

WHEREAS, CARRIER and INDEPENDENT CONTRACTOR are parties to an INDEPENDENT CONTRACTOR AGREEMENT dated _____ _Marin 3, 2015_ _____ (the "ICA"); and

WHEREAS, INDEPENDENT CONTRACTOR is required under the ICA to obtain (and install, if applicable), at INDEPENDENT CONTRACTOR's sole expense, a CARRIER-compatible communications system ("Communications System") for each vehicle to be used in performing INDEPENDENT CONTRACTOR's obligations under the ICA; and

WHEREAS, INDEPENDENT CONTRACTOR is not required under the ICA to purchase or lease a Communications System or any other products, equipment, or services from CARRIER; and

WHEREAS, INDEPENDENT CONTRACTOR wishes to purchase or otherwise obtain the use of certain Communications System(s) equipment and services necessary to operate such Communications System(s) equipment from CARRIER; and

WHEREAS, CARRIER is willing to sell or otherwise provide such Communications System(s) equipment and services to INDEPENDENT CONTRACTOR.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and pursuant to the terms and conditions of the ICA, which are hereby incorporated by reference, CARRIER and INDEPENDENT CONTRACTOR hereby agree as follows:

1. INDEPENDENT CONTRACTOR hereby authorizes CARRIER to provide (and install, if applicable) a Communications System for each vehicle contracted to CARRIER under the ICA, consisting of the following equipment:

   (a) BlackBerry® / EDGE device ("EDGE"); and

   (b) XATA / Turnpike Electronic On-Board Recorder ("EOBR").

2. INDEPENDENT CONTRACTOR agrees to purchase the EDGE for $200.00 per device. INDEPENDENT CONTRACTOR further agrees that CARRIER shall deduct the total purchase price for each EDGE device from INDEPENDENT CONTRACTOR's compensation pursuant to the ICA, in four (4) equal weekly installments.

3. Upon INDEPENDENT CONTRACTOR's payment to CARRIER of all sums due under Section 2 of this Agreement, INDEPENDENT CONTRACTOR shall own the EDGE device(s); provided, however, that INDEPENDENT CONTRACTOR shall have no right, title, or interest in any proprietary software or information installed on the EDGE device(s). CARRIER shall have the unqualified right to remove any such proprietary software and information from the EDGE device(s) at CARRIER's sole discretion.

4. CARRIER agrees to provide an EOBR for INDEPENDENT CONTRACTOR's use for each vehicle contracted to CARRIER under the ICA without any charge to INDEPENDENT CONTRACTOR, except as set forth in Sections 5 and 7 of this Agreement.

5. INDEPENDENT CONTRACTOR agrees to pay CARRIER a weekly service fee of $13.00 per vehicle for Communications System services, to be deducted from INDEPENDENT CONTRACTOR's compensation pursuant to the ICA.

6. INDEPENDENT CONTRACTOR shall maintain all Communications Systems in good working order at all times throughout the term of this Agreement and shall be responsible for promptly repairing or replacing Communications Systems equipment as necessary, at INDEPENDENT CONTRACTOR's sole cost and expense.

7. INDEPENDENT CONTRACTOR acknowledges and agrees that any and all EOBRs are and shall remain the exclusive property of CARRIER at all times. INDEPENDENT CONTRACTOR shall return any and all EOBRs (including all components thereof) to CARRIER immediately upon termination or expiration of this Agreement, in the same condition in which they were originally received by INDEPENDENT CONTRACTOR, normal wear and tear excepted. INDEPENDENT CONTRACTOR agrees to indemnify and hold CARRIER harmless for any and all lost or damaged EOBRs (or any component(s) thereof), and further authorizes CARRIER to deduct the costs of any such loss or damage from INDEPENDENT CONTRACTOR's compensation pursuant to the ICA.

8. This Agreement constitutes the sole and entire agreement between the parties with respect to the subject matter contained herein, and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term. This Agreement may not be amended or changed except by written agreement signed by CARRIER and INDEPENDENT CONTRACTOR. Either party's failure to insist upon strict performance of any provision of this Agreement or exercise any right under this Agreement shall not be construed as a waiver of such provision or right, nor shall such failure excuse the other party from future performance.

9. This Agreement shall terminate upon the termination or expiration of the ICA.

**IN WITNESS WHEREOF**, CARRIER and INDEPENDENT CONTRACTOR have entered into this Communications System / Service Agreement as of the date first stated above.

AGREED:

**CARRIER: Quality Carriers, Inc.**          **Independent Contractor**

| By: _Janet Daigle_ | By: _____ |
|---|---|
| Name Printed: Janet Daigle | Name Printed: CLAYTON SALTER |
| Title: License & Permit Coordinator | Title: OWNER OPERATOR |
| Date: March 3, 2015 | Date: 2-26-15 |

QC004005

## ACCESSORIAL EQUIPMENT AGREEMENT

THIS ACCESSORIAL EQUIPMENT AGREEMENT ("Agreement") is made and entered into this _3_ day of _Martin_, 20_15_, by and between Quality Carriers, Inc., an Illinois corporation with its principal place of business at 4041 Park Oaks Boulevard, Suite 200, Tampa, Florida 33610 ("CARRIER") and ___CLAYTON SALTER___ ("INDEPENDENT CONTRACTOR").

WHEREAS, CARRIER and INDEPENDENT CONTRACTOR are parties to an INDEPENDENT CONTRACTOR AGREEMENT dated ___Martin 3, 2015___ (the "ICA"); and

WHEREAS, INDEPENDENT CONTRACTOR requires certain vehicle accessorial equipment ("Accessorial Equipment") to perform its obligations under the ICA; and

WHEREAS, INDEPENDENT CONTRACTOR is not required under the ICA to purchase or lease such Accessorial Equipment or any other products, equipment, or services from CARRIER; and

WHEREAS, INDEPENDENT CONTRACTOR wishes to purchase such Accessorial Equipment from CARRIER and have CARRIER install such Accessorial Equipment on INDEPENDENT CONTRACTOR's vehicle(s); and

WHEREAS, CARRIER is willing to sell such Accessorial Equipment to INDEPENDENT CONTRACTOR and install the Accessorial Equipment on INDEPENDENT CONTRACTOR's vehicle(s).

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and pursuant to the terms and conditions of the ICA, which are hereby incorporated by reference, CARRIER and INDEPENDENT CONTRACTOR hereby agree as follows:

1. INDEPENDENT CONTRACTOR hereby authorizes CARRIER to provide and install the Accessorial Equipment indicated below on the vehicle(s) leased by INDEPENDENT CONTRACTOR to CARRIER under the ICA:

| Equipment Description | Estimated Cost (Including installation) | Circle One Choice and Initial |
|---|---|---|
| Pump and Compressor | $6,785.00 | Accept / Decline  C J |
| Blower | $9,385.00 | Accept / Decline  CS |
| Hydro Pack | $7,690.00 | Accept / Decline  C ( |
| Fifth Wheel Riser | $1,000.00 | Accept / Decline  C S |

2. INDEPENDENT CONTRACTOR understands and agrees that the prices listed above are estimates only, and that the actual cost of purchasing and installing the Accessorial Equipment will vary depending on vendor, equipment availability, and vehicle configuration. INDEPENDENT CONTRACTOR agrees to pay CARRIER's actual cost, as indicated on an itemized invoice that CARRIER shall provide upon completion of installation.

3. INDEPENDENT CONTRACTOR agrees that CARRIER shall deduct the total purchase price for the Accessorial Equipment, including installation, from INDEPENDENT CONTRACTOR's compensation pursuant to the ICA, at a rate of $50 per week until paid in full.

4. If INDEPENDENT CONTRACTOR fails to make any payment as set forth in Section 3, above, when due, CARRIER shall have the right, but not the obligation, at its sole discretion, to declare the entire principal amount outstanding and accrued interest immediately due and collectible.

5. This Agreement shall terminate upon the termination of the ICA, in which event the entire principal amount outstanding and interest shall become immediately due and collectible. Any sums that may be owed by CARRIER to INDEPENDENT CONTRACTOR pursuant to the ICA may be applied to the outstanding amount due; provided, however, that the application of such funds shall not relieve INDEPENDENT CONTRACTOR from fully satisfying its obligations as set forth herein.

6. In the event that CARRIER institutes a lawsuit or other action to collect any sums owed by INDEPENDENT CONTRACTOR under this Agreement, INDEPENDENT CONTRACTOR agrees that CARRIER shall be entitled to recover its costs, including, but not limited to, reasonable attorney's fees.

7. INDEPENDENT CONTRACTOR agrees to maintain the Accessorial Equipment. INDEPENDENT CONTRACTOR assumes sole responsibility for the costs of any and all necessary maintenance and repairs, and assumes sole risk of loss or damage to the Accessorial Equipment.

8. All right, title and interest in the Accessorial Equipment shall remain with CARRIER until all sums due from INDEPENDENT CONTRACTOR to CARRIER under this Agreement are paid in full.

IN WITNESS WHEREOF, CARRIER and INDEPENDENT CONTRACTOR have entered into this Communications Equipment and Service Agreement as of the date first stated above.

AGREED:

| CARRIER: Quality Carriers, Inc. | Independent Contractor |
|---|---|
| By: _Janet Daigle_ | By: _(signature)_ |
| Name Printed: Janet Daigle | Name Printed: CLAYTON SALTER |
| Title: License & Permit Coordinator | Title: OWNER OPERATOR |
| Date: March 3, 2015 | Date: 2-26-15 |

QC004007

# TRACTOR ANNUAL SYSTEMATIC PREVENTATIVE MAINTENANCE INSPECTION REPORT

THIS IS A FEDERAL LAW SECTION 386.17 OF THE MOTOR CARRIERS SAFETY REGULATIONS

Name **WINSOME ENTERPRISES, INC.**
Quality Carriers-South Gate

Street Address **5042 CECILIA STREET**
City, State **SOUTH GATE, CA 90280-3511**

| | |
|---|---|
| Quality Carrier Unit Number | 73130 |
| Date of Inspection | 2-27-15 |
| QCATIROOS / Assigned Terminal # | 709 |
| Speedometer (Current Mileage) | 276151.8 |
| Repair Order # or Invoice # | |
| Certified Inspector Name (Please Print) | Gerardo Cisneros |

Motor Carrier Operator, if other than owner
**Quality Carriers, Inc.**

Street Address **4041 Park Oaks Blvd.**
City, State, Zip Code **Tampa FL 33610**

| | |
|---|---|
| Inspection Vendor (Complete Business Name) | Quality Carriers South Gate |
| QC Inspection Shop # | 709 |
| Street Address | 8332 Wilcox Ave |
| City, State, Zip Code | South Gate, CA 90280 |

License Plate Number and State **PQ13670**
VIN # (Last 8 digits) **7PZ12901**
Make **Freightliner**
Model **Columbia**
Year **2006**

**PLEASE CHOOSE FROM THE FOLLOWING CODES:   S = Satisfactory;   D = Defective;   CM = Correction Made;   N/A = Not Applicable**

| # | Item | Code |
|---|------|------|
| 1. | Speedometer operational | S |
| 2. | Test horn | S |
| 3. | Check all gauges for proper operation | S |
| 4. | Inspect belts and hoses | S |
| 5. | Check for excessive play in the fan hub | S |
| 6. | Check all fluid levels to include coolant, oil, PS, Transmission & rears | S |
| 7. | Check air filter restriction gauge reading. Service if needed | |
| 8. | Check windshield wipers and washer fluid | S |
| 9. | Inspect overall exterior condition of cab, doors & sheet metal | |
| 10. | Inspect all glass | S |
| 11. | Inspect mirrors | S |
| 12. | Inspect seatbelts | S |
| 13. | Inspect emergency equipment (fire extinguisher, triangle kit). Hazmat requires 10 BC fire extinguisher. No flares allowed | S |
| 14. | Check air loss with service brakes applied | S |
| 15. | Check low air warning, must operate 55 PSI minimum | |
| 16. | Check trailer air supply & tractor protection valve operation | S |

| # | Item | Code |
|---|------|------|
| 17. | Test tractor park brake valve operation | S |
| 18. | Record brake lining thickness in 32nds of an inch and brake adjustments in inches & fractions | |

| | Lining | Adjustment |
|---|---|---|
| Left Steer | 21 /32" | |
| LF Drive | 12 /32" | 3/4 |
| LR Drive | 12 /32" | 3/4 |
| Right Steer | 21 /32" | 3/4 |
| RF Drive | 12 /32" | 3/4 |
| RR Drive | 12 /32" | 3/4 |

Brakes linings meet QC minimum criteria of 10/32nds and DOT regulations — S

| # | Item | Code |
|---|------|------|
| 19. | Check steering column and box for tightness, seals leaking, missing cotter pins (manplay see DOT standard for steering wheel play) | |
| 20. | Check front end (bearings, tie rods, king pins, drag links) | S |
| 21. | Inspect deck plate & mounting | S |
| 22. | Check 5th wheel | S |
| 23. | Remove battery cover. Inspect batteries & cables re-secure cover in place | |
| 24. | Check for excessive fuel, oil air and exhaust leaks | S |
| 25. | Inspect air hoses | S |
| 26. | Check all lights, head lights turn signals, taillights and reflectors | S |

| # | Item | Code |
|---|------|------|
| 27. | Inspect trailer light cord and both plug ends. | |
| 28. | Inspect frame | S |
| 29. | Check springs, hangers, equalizers and U-bolts | S |
| 30. | Check wheels, seal leakage and axle flange. | S |
| 31. | Inspect all wheels, studs & lugs | S |
| 32. | Torque all wheel lugs, record lug nut torque in ft. lbs. | 500 lbs |
| 33. | Record Tire tread depth in 32nds | |

| | | | |
|---|---|---|---|
| LS | 26 /32" | RS | 20 /32" |
| LFO | 21 /32" | LF | 21 /32" |
| RFO | 22 /32" | RF | 22 /32" |
| LRO | 18 /32" | LRI | 16 /32" |
| RRO | 16 /32" | RRI | 14 /32" |

Tires meet QC minimum criteria of 5/32nds Steer and 3/32nds Drive — S

| # | Item | Code |
|---|------|------|
| 34. | Inspect all unloading equipment for safe operation | S |
| 35. | Inspect condition & cleanliness of cab/sleeper | S |
| 36. | Rotate and inspect pump, PTO, guard and bypass | S |
| 37. | Inspect aux. compressor, PTO air unloading plumbing & valves | S |
| 38. | Inspect hose rack & mounting | S |
| 39. | Check & lube as needed Lube chassis, cams, slacks, suspension, steering, 5th wheel, drive line, clutch linkage and any other grease fittings | S |
| 40. | Install inspection sticker on truck | S |

BELOW GIVE BRIEF EXPLANATION OF REPAIRS MADE FOR ANY DEFECT/CORRECTION AS NOTED ABOVE, INCLUDE DATE OF REPAIR & ANY NEW PARTS USED

I hereby certify that I am qualified to inspect the equipment, with full knowledge of D.O.T. criteria, and that on **2 / 27 / 15** I carefully inspected the equipment described above and that this is a true and correct report of the results of such inspection and this equipment meets D.O.T. requirements.

Inspection Facility name/Terminal number (if QC shop) **709**

Signature of Authorized Inspector **Gerardo Cisneros**

Printed Name of person signing form **Gerardo Cisneros**

SCAN TO TRACTOR INSPECTIONS OR SEND TO CORPORATE MAINTENANCE DEPARTMENT

Revised 11/2011

## RECEIPT FOR POSSESSION OF CONTRACTED VEHICLE(S)

Received from _____ Clayton Salter _____ the vehicle(s)
described in the Independent Contractor Agreement dated _____ March 3 _____, 2015

Equipment received at _____ Terminal 709 _____ on
_____ March 3 _____, 2015, at _____ 8:00 _____ a.m. / p.m.

By: _____ Janet Daigle _____
(CARRIER representative's signature)

Janet Daigle
License & Permit Coordinator

Printed Name: _____

------------------------------------------------------------

## RECEIPT FOR RETURN OF CONTRACTED VEHICLE(S)

Received in good order from _____ the vehicle(s)
described in the Independent Contractor Agreement dated _____, 20___.

Equipment received at _____ on
_____, 20___, at _____ a.m. / p.m.

By: _____
(INDEPENDENT CONTRACTOR representative's signature)

Printed Name: _____