1  Christopher C. McNatt, Jr. (SBN 174559)
   cmcnatt@scopelitis.com
2  Scopelitis, Garvin, Light, Hanson & Feary, LLP
   2 North Lake Avenue, Suite 560
3  Pasadena, CA 91101
   P: 626-795-4700
4  F: 626-795-4790

5  Christopher J. Eckhart (SBN 331414)
   ceckhart@scopelitis.com
6  E. Ashley Paynter (SBN 333428)
   apaynter@scopelitis.com
7  Scopelitis, Garvin, Light, Hanson & Feary, P.C.
   10 West Market Street, Suite 1400
8  Indianapolis, IN 46204
   P: 317-637-1777
9  F: 317-687-2414

10 Attorneys for Defendants,
   Quality Carriers, Inc. and Quality Distribution, Inc.

11 (additional counsel listed on next page)

12

13               UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| CLAYTON SALTER, individually, and on behalf of all others similarly situated, | Case No.: 2:20-cv-00479-JFW-JPR |
| Plaintiff, | Assigned to the Honorable John F. Walter |
| vs. | **DECLARATION OF RICHARD WALLACE** |
| QUALITY CARRIERS, INC., an Illinois Corporation; QUALITY DISTRIBUTION, INC., a Florida Corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |

16

17

18

19

20

21

22

23

24

25

26

27

28

Jared S. Kramer, admitted *Pro Hac Vice*
jskramer@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
P: 312-255-7200
F: 312-422-1224

Andrew R. Brehm, admitted *Pro Hac Vice*
abrehm@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
330 E. Kilbourn Avenue, Suite 827
Milwaukee, WI 53202
P: 414-219-8500
F: 414-278-0618

Attorneys for Defendants,
Quality Carriers, Inc. and Quality Distribution, Inc.

I, Richard Wallace, declare and state the following:

1.     I am the President and Chief Executive Officer of Winsome Enterprises, Inc. (Winsome) and have held this position since August 2002. I am submitting this Declaration in support of the Defendants' Motion for Partial Summary Judgment in the above-captioned matter.

2.     Unless otherwise indicated, the following facts are based upon my personal knowledge and my understanding and review of Winsome's company practices and records. If called as a witness in this proceeding, I would be competent to testify regarding the same.

3.     Winsome is a transportation company based in South Gate, California. Winsome leases and operates three main terminals in South Gate, Richmond, and Stockton, California; each of which operates separately. Winsome has never shared any common employees or ownership with either Quality Carriers, Inc. (Quality) or Quality Distribution, Inc. (Quality Distribution).

4.     Throughout the time period between October 3, 2015 and the present, Winsome has employed, and continues to employ, its own company drivers to haul loads on behalf of Quality's customers using Winsome's trucks. Winsome dispatched these drivers from each of its California terminals.

5.     Under U.S. Department of Transportation (DOT) regulations, a transportation company must obtain operating authority from the DOT to haul freight for customers. Winsome does not have its own federal operating authority. Therefore, to conduct its business of transporting freight for Quality's customers under Quality's operating authority, Winsome entered into a contract with Quality as required by the Federal Leasing Regulations. Under Quality's contract with Winsome, Winsome has transported freight for Quality's customer's, using Winsome's trucks and employee drivers, in exchange for a portion of the amounts that Quality charged to Quality's customers for transportation services.  Winsome and Quality have operated under this arrangement at all times the Plaintiff in this case, Clayton Salter, was a contractor with



Quality.

6. Winsome does not contract with any independent contractor drivers (Contractors).

7. Winsome employed Mr. Salter as an employee to haul loads on behalf of Quality's customers between 2008 and 2015. In 2015, Mr. Salter voluntarily ended his employment relationship with Winsome. He then decided to lease the truck he had been driving from Winsome with the option to purchase it at the conclusion of the lease and made the business decision to enter into an independent contractor agreement directly with Quality to operate under Quality's operating authority.

8. I know that as an independent contractor with Quality, Mr. Salter primarily hauled loads of sodium hypochlorite (commonly known as liquid bleach) for one of Winsome's customers, Olin Corporation.

9. In 2019, Mr. Salter informed Winsome that he was injured, and had stopped working as a result. When Mr. Salter stopped making payments on his truck, Winsome re-possessed the truck that Mr. Salter had been leasing from Winsome, in accordance with the terms of his lease.

10. As the President and CEO of Winsome, I am familiar with its record-keeping practices, and its policies with respect to the documentation of any meetings that the company holds, which Contractors might attend. I know that it is Winsome's regular practice to make and keep exact copies of sign-in sheets for any such meetings in the ordinary course of its business. Those records are made and kept at or near the time that the meetings occur. All individuals that attend any safety meeting held by Winsome are required to sign their name on the sign-in sheet. Any drivers that attend such meetings are also required to sign their unique Driver identification number (Driver Number), as well as the number pertaining to the terminal that they are dispatched out of.

11. Between October of 2015 and the time that Mr. Salter lost possession of his truck in 2019, Winsome only held one meeting that any Contractors attended. That

meeting was a safety meeting, which was held on June 18, 2016. A true and accurate copy of the sign-in sheet for that meeting is attached as <u>Exhibit 6</u>, with the names of the individuals who attended the meeting redacted. Each individual listed who does not have a corresponding Driver Number listed next to it was not a driver. Rather, they were Winsome employees that either worked in Winsome's office, as part of Winsome's operations department, or as mechanics.

12.    Mr. Salter's unique Driver Number was CS0091. The sign-in sheet for the June 18, 2016 meeting does not include either Mr. Salter's name or his Driver Number. Based on the above, I determined that Mr. Salter did not attend any meetings Winsome held during the time period that he contracted with Quality between October of 2015 and the time that he lost possession of his truck in 2019.

I declare under penalty of perjury under the laws of the United States of America that these statements are true and accurate.


Dated: September 3, 2021          _____

                                            Richard Wallace

4838-2946-3033, v. 8