| | |
|---|---|
| Name | Taras Kick (SBN 143379), The Kick Law Firm, APC |
| Address | 815 Moraga Drive |
| City, State, Zip | Los Angeles, CA 90049 |
| Phone | (310) 395-2966 |
| Fax | (310) 395-2088 |
| E-Mail | taras@kicklawfirm.com |

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON SALTER, individually and on behalf of all others similarly situated<br><br>PLAINTIFF(S),<br><br>v.<br><br>QUALITY CARRIERS, INC., an Illinois Corporation; QUALITY DISTRIBUTION, a Florida Corporation,<br>DEFENDANT(S). | CASE NUMBER:<br><br>2:20-cv-00479-JFW-JPRx<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____PLAINTIFF CLAYTON SALTER_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   10/27/2021 Minutes Order (Dkt. No. 127)

☒ Judgment (specify):
   11/9/2021 Final Judgment (Dkt. No. 129)

☐ Other (specify):

Imposed or Filed on _____. Entered on the docket in this action on  10/27/2021 and 11/9/2021 .

A copy of said judgment or order is attached hereto.

| | |
|---|---|
| November 29, 2021 | /s/ Taras Kick |
| Date | Signature |
| | ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk |

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 20-479-JFW(JPRx)** | Date:  October 27, 2021 |
| Title: | Clayton Salter -v- Quality Carriers, Inc., et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

PROCEEDINGS (In Chambers):   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF EMPLOYMENT [filed 9/3/21; Docket Nos. 86 and 94]; and

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [filed 9/3/21; Docket No. 87]

On September 3, 2021, Plaintiff Clayton Salter ("Plaintiff") filed a Motion for Partial Summary Judgment on the Issue of Employment ("Motion").  On September 13, 2021, Defendants Quality Carriers, Inc. ("Quality") and Quality Distribution, Inc. ("Quality Distribution") (collectively, "Defendants") filed their Opposition.  On September 20, 2021, Plaintiff filed a Reply.  On September 3, 2021, Defendants filed a Motion for Partial Summary Judgment ("Motion").  On September 13, 2021, Plaintiff filed his Opposition.  On September 20, 2021, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument.  The matters were, therefore, removed from the Court's October 4, 2021 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

**A.      The Parties**

Quality is a for-hire motor carrier registered with the Federal Motor Carrier Safety Administration ("FMCSA"), an agency of the U.S. Department of Transportation ("DOT"), and authorized to provide transportation services to the shipping public.  Quality specializes in

providing transportation and logistics services related to the transportation of chemicals – primarily in liquid form – on behalf of its customers throughout North America.  Quality Distribution is a holding company and does not have any employees, equipment, or customers.  Quality was previously a subsidiary of Quality Distribution, until it was acquired by CSX Corporation on July 1, 2021.

Quality does not have any employees or operate any facilities in California.  Instead, Quality contracts with a separate company, Winsome Enterprises, Inc. ("Winsome"), to coordinate and manage the transportation of freight for Quality's customers throughout California.[1]  Although Winsome owns its own trucks and employs its own drivers, it does not have motor carrier operating authority from the FMCSA.  Therefore, in order to provide transportation services on behalf of Quality and comply with federal law, Winsome has entered into a contract with Quality which allowed it to operate under Quality's motor carrier authority.  *See* 49 C.F.R. § 376.11(a).  In return for the transportation services provided by Winsome, Quality pays Winsome a portion of the amounts it bills and collects from its customers.

Winsome leases and operates three main terminals in California: South Gate, Richmond, and Stockton.[2]  Winsome operates each of these terminals separately.  Each terminal services different customers and has its own Winsome-employed dispatchers, who offer loads of freight to Winsome's employee drivers.

In addition to Quality's agreement with Winsome to provide transportation services in California to its customers, Quality also contracts directly with independent contractor drivers ("Independent Contractor Drivers").  Each Independent Contract Driver must be qualified to operate a commercial motor vehicle under regulations promulgated by the FMCSA.  The relationship between Quality and each Independent Contractor Driver is governed by an Independent Contractor Agreement ("Agreement").  Each Independent Contractor Driver operates out of one of the three Winsome-operated terminals and Winsome-employed dispatchers in each terminal offer loads of freight to Quality's Independent Contractor Drivers as well as its own drivers.

Plaintiff worked as an Independent Contractor Driver for Quality from March 2015 until December 2019, and operated out of the South Gate terminal.  Prior to becoming an Independent Contract Driver, from 2008 until March 2015, Plaintiff was employed by Winsome as a driver.[3]

---

[1]  Winsome does not have any common employees or ownership with either Quality or Quality Distribution.

[2]  Winsome has operated the South Gate terminal since February 2009 and the Richmond terminal since 2004.  Winsome opened the Stockton terminal in January 2020 after Winsome purchased the assets of two California trucking companies, Bulk Transportation ("Bulk") and DTI Associates, LLC ("DTI").

[3]  Prior to becoming an employee driver for Winsome, Plaintiff was employed as a driver for Quality for approximately six months (beginning in 2007 and ending in 2008) before Quality withdrew its direct involvement in California operations and entered into its contract with Winsome

However, in March 2015, after he was advised by Winsome's President and CEO Richard Wallace that he could make more money as an Independent Contractor Driver, Plaintiff voluntarily ended his employment with Winsome and entered into an Agreement with Quality.  Plaintiff also entered into a contract with Winsome to lease (with the option to purchase) his truck.  In 2019, Plaintiff was injured and stopped working and making lease payments on his truck.  Winsome repossessed his truck and Quality terminated his then-current Agreement when it learned that Plaintiff no longer had the truck identified in the Agreement.

### B.     The Independent Contractor Driver Agreements

As a FMCSA-registered motor carrier, Quality is statutorily obligated to comply with certain regulations promulgated by the DOT.  49 U.S.C. § 13902(a)(1); 49 C.F.R. § 367.7.  A primary goal of this regulatory scheme is to prevent large motor carriers from taking advantage of independent contractor drivers.  *Owner Operator Independent Drivers Ass'n, Inc. V. Swift Transp. Co., Inc. (AZ)*, 367 F.3d 1108 (9th Cir. 2004).  For example, the regulatory scheme authorizes DOT to require that all leases between motor carriers and independent contractor drivers must be in writing and contain certain basic information, such as the duration of the lease and the compensation to be paid the independent contractor driver.  49 U.S.C. § 14102(a); *see* 49 C.F.R. § 376.11(a) (requiring written leases), § 376.12(b) (requiring that leases "specify the time and date . . . on which the lease begins and ends"), and § 376.12(d) (requiring that the amount to be paid to the owner-operator be "clearly stated on the face of the lease").  In order to comply with this regulatory scheme, Quality required every Independent Contractor Driver to sign an Agreement.  Quality's Agreement provides that Quality will lease commercial motor vehicles from the Independent Contractor Drivers, which will be used to haul bulk commodities on behalf of Quality and its customers.  The Agreement also provides that the Independent Contractor Drivers will provide the necessary labor to transport, load, unload, and perform other transportation-related services on behalf of Quality and its customers.[4]  In exchange for providing the necessary equipment and services, Quality agreed to pay each Independent Contract Driver a percentage of the adjusted

---

to manage its operations.

[4]  For example, Quality's 2015 Agreement provides in relevant part that:

[Quality] is for-hire interstate motor carrier of property, registered with the Federal Motor Carrier Safety Administration ("FMCSA") of the U.S. Department of Transportation ("DOT"), and INDEPENDENT CONTRACTOR is willing to lease the following commercial motor vehicles (the "Equipment") to [Quality], and to perform personally or through others, as an independent contractor, services related to the operation of the Equipment, for the purpose of hauling bulk commodities on behalf of [Quality] . . .

INDEPENDENT CONTRACTOR agrees to use the Equipment, together with all necessary labor, which INDEPENDENT CONTRACTOR shall furnish at its sole cost and expense, to transport, load, unload, and perform other transportation-related services (the "Services") on behalf of [Quality] and its customers.

gross revenue for each load that he actually transports.[5]

During the period that Plaintiff was an Independent Contractor Driver, Quality used three different versions of its Agreement – the "2015 Agreement," the "2016 Agreement," and the "2018 Agreement."[6]  Each version contained several similar provisions.  Specifically, each version reserved to the Independent Contractor Driver the right to control the "manner and means" used to provide transportation services to Quality and Quality's customers, including the unconditional right to decline any load of freight offered by the dispatchers for any reason.  See 2015 Agreement, § 6 ("[Quality] has no right to, and will not, control the manner nor prescribe the method used by INDEPENDENT CONTRACTOR to perform the Services"); 2016 Agreement, § 1 ("The manner and means of reaching such results, however, are within the sole discretion of the CONTRACTOR, and no officer or employee of [Quality] shall have the authority to impose any term or condition on CONTRACTOR or on CONTRACTOR's continued operation that is contrary to this understanding"); 2018 Agreement, § 1 (same language as 2016 Agreement).

Each version of the Agreement also permitted the Independent Contractor Driver to hire drivers to operate the equipment identified in the Agreement.  For example, the 2015 Agreement, § 7 provides in part:

> INDEPENDENT CONTRACTOR shall furnish sufficient drivers, helpers and other workers as INDEPENDENT CONTRACTOR deems necessary for the performance of the obligations of INDEPENDENT CONTRACTOR under the terms of this Agreement ("Employees").  Any and all Employees furnished by INDEPENDENT CONTRACTOR shall be an Employee of INDEPENDENT CONTRACTOR and shall be hired, directed, paid, controlled and discharged solely by INDEPENDENT CONTRACTOR.

See also 2016 Agreement, § 4.01 (providing in part that "CONTRACTOR shall provide competent drivers who meet [Quality's] minimum driver qualification standards and all of the requirements of the U.S. DOT, including but not limited to, familiarity and compliance with state and federal motor carrier safety laws and regulations"); 2018 Agreement, § 4.01 (same language as 2016 Agreement).

In addition, each version of the Agreement set forth the terms of each Independent Contractor Driver's compensation, including use of the Independent Contractor Driver's equipment and the services that the Independent Contractor Driver agreed to provide to Quality.  For example, the 2015 Agreement, § 4 provides in part:

> [Quality] agrees to pay and INDEPENDENT CONTRACTOR agrees to accept as full

---

[5]  During his deposition, Plaintiff testified that he understood that the compensation he received from Quality covered all of the "transportation-related services" he provided as a Class A driver, including loading, unloading, completing paperwork, waiting at shippers and receivers, fueling, and pre- and post-trip inspections.

[6]  Plaintiff signed each version of the Agreement.

and complete payment for use of the Equipment and for performance of the Services, compensation as set forth on Schedule A hereof, as amended from time to time.

*See also* 2016 Agreement, § 6 (providing in part that "[t]he rates and charges payable to CONTRACTOR for Services rendered under this Agreement are set forth in the attached Section I of Schedule A, subject to the deductions authorized in this Agreement, Section II of Schedule A, Schedule A-3 and/or any other agreement(s) which may authorize settlement deductions"); 2018 Agreement, § 6 (same language as 2016 Agreement).

Moreover, each version of the Agreement identified which party – Quality or the Independent Contractor Driver – was responsible for certain expenses, and it authorized Quality to take certain deductions from the Independent Contractor Driver's settlement payments.  *See* 2015 Agreement, § 4; 2016 Agreement, Schedule A; 2018 Agreement, Schedule A.

The three versions of the Agreement also contained several important distinctions. Specifically, each version had different term and termination provisions.  *See* 2015 Agreement, § 22; 2016 Agreement, § 10; 2018 Agreement, § 10.  In addition, the 2016 and 2018 Agreements specifically stated that the Independent Contractor Driver could use the Independent Contractor Driver's equipment to provide transportation services to a different motor carrier.  For example, the 2016 Agreement provides in part that "[n]othing contained herein shall restrict or limit the right of CONTRACTOR to enter into the same contract or similar contract with other motor carriers for the same type of services."  2016 Agreement, § 3.07; *see also* 2018 Agreement, § 3.07.

### C. Procedural History

On October 3, 2019, Plaintiff filed a Class Action Complaint in Los Angeles Superior Court. On January 16, 2020, Defendants filed a Notice of Removal, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA").  On March 12, 2020, the Court granted Plaintiff's Motion to Remand, and remanded this action to Los Angeles Superior Court ("March 12, 2020 Order").  Defendants appealed the Court's March 12, 2020 Order, and on September 8, 2020, the Ninth Circuit vacated the Court's March 12, 2020 Order and remanded this action to this Court.

On November 30, 2020, Plaintiff filed a First Amended Complaint ("FAC"), alleging causes of action for: (1) failure to provide required meal periods in violation of California Labor Code §§ 226.7, 510, 512, 1194, and 1197, and IWC Wage Order No. 9-2001, § 11; (2) failure to provide required rest periods in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9-2001, § 12; (3) failure to pay minimum wages in violation of California Labor Code §§ 1194 and 1197, and IWC Wage Order No. 9-2001, § 4; (4) failure to pay all wages due to discharged or quitting employees in violation of California Labor Code §§ 201, 202, and 203; (5) failure to provide accurate itemized wage statements in violation of California Labor Code § 226 and IWC Wage Order No. 9-2001, § 7; (6) failure to indemnify employees for necessary expenditures incurred in discharge of duties in violation of California Labor Code § 2802; (7) unlawful wage deductions in violation of California Labor Code §§ 221, 223, and 400-410, and IWC Wage Order No. 9-2001, § 8; and (8) unfair and unlawful business practices in violation of California Business & Professions Code §§ 17200, *et seq.* ("UCL").

On February 26, 2021, Plaintiff filed a Motion for Class Certification. On April 9, 2021, the Court denied Plaintiff's Motion for Class Certification, and Plaintiff appealed that decision to the Ninth Circuit. Plaintiff's appeal is currently pending before the Ninth Circuit.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.    Discussion

In his Motion, Plaintiff seeks a determination that he was an employee under the ABC test and that the ABC test applies to each of the causes of action alleged in the FAC. In their Opposition, Defendants argue that Plaintiff is an independent contractor under the *Borello* test and that the *Borello* test applies to Plaintiff's non-wage order claims (*i.e.,* his claims alleged under California Labor Code §§ 203, 221, 226, and 2802). Although Defendants concede that the ABC test applies to Plaintiff's wage order claims, they argue that the Federal Airline Administration Authorization ("FAAAA") preempts application of the so-called "B prong" of the ABC test to interstate truck drivers' employment misclassification claims. Defendants also concede that the

Ninth Circuit recently ruled that the FAAAA does not preempt application of the "B prong" to interstate truck drivers' employment misclassification claims, but asks the Court to defer ruling on Plaintiff's Motion pending the outcome of the Supreme Court's review of the preemption issue.

In their Motion, Defendants seek summary judgment on Plaintiff's first, second, third, fourth, sixth, and seventh causes of action.  Defendants argue that Plaintiff's first and second causes of action alleging meal and rest break violations are: (1) preempted by the FMCSA's Hours of Service Regulations pursuant to the FMCSA's December 28, 2018 grant of petition for determination of preemption and; (2) preempted by the Hazardous Materials Regulations ("HMR") governing the transport of hazardous materials in interstate commerce.  Defendants also argue that Plaintiff's third cause of action alleging failure to pay the minimum wage fails because Plaintiff was paid for all of the work he performed pursuant to the terms of the Agreement.  In addition, Defendants argue that Plaintiffs sixth and seventh causes of action alleging Defendants failed to indemnify Plaintiff for his business expenses and that Defendants took unlawful deductions from his wages are preempted by the FMCSA's Federal Leasing Regulations.  Defendants also argue that there is no private right of action for Plaintiff's unlawful deductions claim and that any deduction taken from Plaintiff's compensation was statutorily authorized under California Labor Code § 224.  Finally, Defendants argue that because Plaintiff's first, second, sixth, and seventh causes of action fail and Plaintiff's fourth cause of action alleging the Defendants failed to pay Plaintiff all the wages he was owed upon termination is derivative of those claims, it also fails.  In his Opposition, Plaintiff argues that his meal and rest break claims are not preempted by the FAAAA because Plaintiff was a short haul driver and that the Hazardous Material Transportation Act ("HMTA") does not preempt meal and rest breaks.  Plaintiff also argues that he performed work that he was not paid for and, as a result, Defendants are not entitled to summary judgment on his failure to pay minimum wage claim. In addition, Plaintiff argues that federal and state law do not allow a company to charge its employees for the company's business costs.

### A. Plaintiff's Motion for Summary Judgment

#### 1. The *Borello* and ABC Tests

For nearly three decades, California courts have used a test based on the decision in *S. G. Borello & Sons, Inc. v. Department of Industry Relations*, 48 Cal. 3d 341 (1989) to determine whether workers are correctly classified as employees or independent contractors.  The *Borello* test considers the "right to control work," as well as many other factors, including: (1) whether the worker is engaged in a distinct occupation or business; (2) the amount of supervision required; (3) the skill required; (4) whether the worker supplies the tools required; (5) the length of time for which services are to be performed; (6) the method of payment; (7) whether the work is part of the regular business of the principal; and (8) whether the parties believe they are creating an employer-employee relationship.  *Id*. at 355-58.

In April 2018, the California Supreme Court replaced the *Borello* test with the "ABC test" to determine employment under California wage orders.  *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018).  The California Supreme Court held that under the "suffer or permit to work" language used in all California wage orders, any worker who performs work for a business is presumed to be an employee who falls within the protections afforded by a wage order.  *Id*. at 916.  However, such a worker can properly be found to be an independent contractor – to whom the

wage order would not apply – if the hiring entity establishes:

> (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

*Id*. at 916-17.  If the putative employer fails to establish any one of the three prongs, the worker will be properly classified as an employee.  California's Assembly Bill 5 (AB 5) codified *Dynamex*'s holding and adopted the ABC test for all provisions of the California Labor Code, the Unemployment Insurance Code, and IWC wage orders, with numerous exemptions.  *See* A.B. 5, Ch. 296, 2019-2020 Reg. Sess. (Cal 2019); Cal. Lab. Code §§ 2750.3 *et seq.*  AB-5 is not retroactive and, as a result, applies only to work performed after January 1, 2020, which was the effective date of the statute.  *See Olson v. California*, 2020 WL 905572, at *12 (C.D. Cal. Feb. 10, 2020) ("AB 5 does not apply retroactively . . . Instead, AB 5 applies to work performed after January 1, 2020.").

In addition, the California Supreme Court recently held the ABC test adopted in *Dynamex* applies retroactively.  *Vazquez v. Jan-Pro Franchising International, Inc.*, 10 Cal. 5th 944 (2021).  However, the California Supreme Court also clarified that *Dynamex* applies only to wage orders.  *Id.*

> ### 2. The ABC Test Applies to Plaintiff's Wage Order Claims and the *Borello* Test Applies to Plaintiff's California Labor Code Claims

In this case, because *Dynamex* applies retroactively, but only to wage orders, and AB 5 is not retroactive, the ABC test applies to Plaintiff's wage order claims and the *Borello* test applies to Plaintiff's California Labor Code claims.  Indeed, Defendants concede that the ABC test applies to Plaintiff's first cause of action alleging failure to provide required meal periods, second cause of action alleging failure to provide required rest periods, third cause of action alleging failure to pay minimum wages, and eighth cause of action alleging violation of the UCL to the extent that claim is derivative of the first, second, and third causes of action.  However, Defendants argue that the FAAAA preempts application of the B prong of the ABC test to interstate truck drivers' employment misclassification claims.  Defendants acknowledge that in *California Trucking Ass'n v. Bonta*, 996 F.3d 664, 658-65 (9th Cir. 2021), the Ninth Circuit concluded that the FAAAA "does not preempt [the ABC test] as applied to motor carriers," but because the Ninth Circuit has stayed the issuance of its mandate pending the California Trucking Association's Petition for Writ of Certiorari to the Supreme Court, Defendants ask the Court to defer ruling on Plaintiff's Motion pending the Supreme Court's  decision on this issue.  However, "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority[.]"  *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (*citing McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970)).  This principle applies even when, as in this case, the Ninth Circuit has stayed the mandate to allow an opportunity to petition for review of the decision.  *See In re Zermeno-Gomez*, 868 F.3d 1048, 1050–53 (9th Cir. 2017) (concluding that the district court committed clear error

and ordering the district court to comply with a published decision issued by the Ninth Circuit despite the fact that the mandate had been stayed to allow the government to seek *en banc* review or to petition for a writ of certiorari). As a result, the Court concludes that the ABC test is not preempted by the FAAAA. In addition, because it is undisputed that the ABC test applies to the first, second, and third causes of action (and related portions of the eighth cause of action) and Defendants do not dispute that Plaintiff qualifies as an employee under the ABC test, the Court also concludes that Plaintiff qualifies as an employee for first, second, and third causes of action (and related portions of the eighth cause of action).

With respect to Plaintiff's fourth cause of action alleging Defendants failed to pay all wages due upon Plaintiff's termination, fifth cause of action alleging Defendants failed to provide accurate itemized wage statements, sixth cause of action alleging Defendants failed to indemnify for necessary expenditures incurred in discharge of duties, seventh cause of action alleging Defendants unlawfully deducted wages, and eighth cause of action alleging violation of the UCL to the extent that claim is derivative of the fourth, fifth, sixth, and seventh causes of action, Defendants argue that those claims are California Labor Code claims and, as a result, the *Borello* test applies. In response, Plaintiff argues that all of his claims are either brought directly under a wage order or are related to Wage Order No. 9[7] (or both) and, as a result, the ABC test applies to all of his claims. Relying on *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019), Plaintiff argues that "the California Court of Appeal has expressly held that all of the claims at issue here are governed by the ABC test, regardless of when they arose." Amended Motion (Docket No. 94), 6: 26-28. Defendants argue that Plaintiff misstates the holding in *Gonzales* and, even if *Gonzales* does support Plaintiff's argument, *Gonzales* is not controlling authority and is not consistent with other California courts of appeal.

In *Gonzales*, 40 Cal. App. 5th at 1139, the plaintiff was a driver for a transit company who sued the transit company for allegedly misclassifying him as an independent contractor resulting in violation of various provisions of the labor code and wage orders. In considering whether the trial court improperly denied class certification, the Second District Court of Appeals found that the ABC test applied to labor code claims "which are either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order" and that any other Labor Code claims should be analyzed under the *Borello* test. Id. at 1157. Thus, although the Second District may have expanded the applicability of the ABC test beyond strict wage order violations, it is not as broad as Plaintiff claims. In addition, in *Garcia v. Border Transp. Group, LLC*, 28 Cal. App. 5th 558, 570–71 (2018), the Fourth District Court of Appeals found that the ABC test only applied to the plaintiff's wage order claims and the *Borello* test applied to the plaintiff's other claims, explaining that "Dynamex did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections." *Id.* at 570 (*citing Cal. Trucking Assn. v. Su,* 903 F.3d 953, 959 n. 4 (9th Cir. 2018)) (internal quotation marks omitted). "To the contrary, the [California] Supreme Court recognized that different standards could apply to different statutory claims." *Id.*

Therefore, the Court agrees with Defendants that the California courts of appeals are split

---

[7] Wage Order No. 9 applies, with some exceptions, "to all persons employed in the transportation industry whether paid on a time, piece rate, commission or other basis."

on the applicability of the ABC test beyond strict wage order claims, and that *Gonzales* does not control the Court's decision. Indeed, "[d]ecisions of the six [California] district appellate courts are persuasive but do not bind each other or [the Ninth Circuit]." *Muniz v. United Parcel Service, Inc.*, 738 F.3d 214 (9th Cir. 2013). As a result, the Court "declines to expand the application of the *Dynamex* ABC test beyond the 'one specific context' endorsed by the California Supreme Court." *Henry v. Central Freight Lines, Inc.*, 2021 WL 3187257 (E.D. Cal. July 28, 2021) (*quoting Dynamex*, 4 Cal.5th at 913-14); *see also Haitayan v. 7-Eleven, Inc.*, 2021 WL 757024, at *5 (C.D. Cal. 2021) (holding that, in *Vazquez*, the court also "emphasized that Dynamex applies only to *wage orders*") (emphasis in original).

As a result, the Court concludes that Plaintiff's claims for expense indemnification, unlawful deductions, waiting time penalties, wage statement penalties, and violations of UCL that are derivative of those claims are not grounded in wage orders. *See Moreno v. JCT Logistics, Inc.*, 2019 WL 3858999, *12 (C.D. Cal. May 29, 2019) (holding that "*Dynamex* [applies] to the meal break claim, rest break claim, minimum wage claim, and the [related portions of the] UCL claims . . . The *Borello* test applies to the wage statement claim; the claim for failure to pay all wages owed every pay period; the business expenses claim; and the [related portions of the] UCL claims"); *see also Henry*, 2021 WL 3187257 (holding that the plaintiff's claims for reimbursement, unlawful deductions, waiting time penalties, wage statement penalties, and violations of PAGA were not grounded in wage orders and the *Borello* test would apply); *Haitayan*, 2021 WL 757024, at *5 (finding the *Borello* test applies to the plaintiff's Section 2802 claim).

Indeed, in the FAC, Plaintiff alleges that his expense indemnification claim arises under California Labor Code § 2802, and not a wage order. In addition, although Plaintiff argues in his Motion that all of his claims arise under or relate to Wage Order No. 9, Wage Order No. 9 only provides that employees are entitled to reimbursement for uniforms, hand tools, and equipment. *See* Industrial Welfare Commission Order No. 9-2001 Regulating Wages, Hours and Working Conditions in the Transportation Industry ("Wage Order No. 9"), § 9; *see also Gonzales v. Nefab Packaging, Inc.*, 637 Fed. App'x 310, 311-12 (9th Cir. 201) (discussing Section 9(B) of Wage Order No. 9 and holding that "[t]his provision plainly requires the employer to provide tools to certain employees, and exempts from that requirement those earning at least two times the minimum wage. It does not impose a new minimum wage as a remedy for the employer's failure to provide the tools. As the district court recognized, California law instead requires the employer to indemnify employees for 'all necessary expenditures or losses incurred....' Cal. Lab. Code § 2802(a)"). In his claim, Plaintiff seeks indemnification for other allegedly "necessary expenses", including truck acquisition costs, insurance, fuel, tolls, communication device use, tires, and truck repair. However, a truck driver's truck does not qualify as a "hand tool" or "equipment" as used in Wage Order No. 9. *See, e.g., Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 24 (2007) (holding "that it is perfectly lawful for an employer to requires its employees to provide their own vehicles as a condition of employment"). Similarly, Plaintiff alleges that his waiting time penalty claim arises under California Labor Code §§ 201, 202, and 203 and not a wage order. Moreover, Wage Order No. 9 does not address the final payment of wages or impose any waiting time penalties. Furthermore, because Plaintiff's unlawful wage deduction claim is based on the same facts as his expense indemnification claim, that claim also does not arise from or relate to Wage Order No. 9. *See* Wage Order No. 9, § 8 ("No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or

willful act, or by the gross negligence of the employee"). Furthermore, Plaintiff's wage statement claim seeks penalties under California Labor Code § 226, but Wage Order No. 9 does not impose penalties related to wage statements. See Wage Order No. 9, § 7.

Accordingly, Plaintiff's Motion is granted with respect to Plaintiff's first, second, and third causes of action (and related portions of the eighth cause of action). Specifically, the Court concludes that Plaintiff should be classified as an employee, not an independent contractor, only as to those causes of action. Plaintiff's Motion is denied with respect to Plaintiff's fourth, fifth, sixth, and seventh causes of action (and related portions of the eighth cause of action).[8]

### B.    Defendants' Motion for Summary Judgment

#### 1.    Plaintiff's Meal and Rest Break Claims Are Preempted

In the FAC Plaintiff alleges in his first cause of action that Defendants failed to provide him with the required meal periods under California law and Plaintiff alleges in his second cause of action that Defendants failed to provide the required rest periods under California law.

Pursuant to the Motor Carrier Safety Act of 1984, the FMCSA has authority to determine that state laws or regulations on commercial motor vehicle safety are preempted. See 49 U.S.C. § 31141. Pursuant to this authority, the FMCSA on December 28, 2018 determined that federal law preempts California's meal and rest break rules as applied to property-carrying commercial motor vehicle drivers covered by the FMCSA's hours of service ("HOS") regulations. See *California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption*, 83 Fed. Reg. 67470-01, *67480, 2018 WL 6809341 (Dec. 28, 2018). In addition, the Motor Carrier Safety Act of 1984 provides that: "A State may not enforce a State law or regulation on commercial motor vehicle safety" that the FMCSA has determined is preempted. 49 U.S.C. § 31141(a). Moreover, under Section 31141, judicial review of a preemption determination may only be conducted by a circuit court. See 49 U.S.C. § 31141(f). In *Int'l Bhd. of Teamsters v. FMCSA*, 986 F.3d 841, 858 (9th Cir. 2021), the Ninth Circuit undertook such a review and affirmed the validity of the FMCSA's preemption determination. As a result, "commercial motor vehicle drivers subject to the FMCSA's hours-of-service regulations may not bring claims under California's meal and rest break rules." *Valiente v. Swift Transportation Co. of Arizona, LLC*, 2021 WL 1799808, at *2 (C.D. Cal. Apr. 5, 2021).

In this case, Plaintiff argues that his meal and rest break claims are not preempted under FMCSA Order because he was a "short haul driver" under the Motor Carrier Safety Act of 1984, and short haul drivers are not subject to the FMCSA's HOS regulations. However, Plaintiff has failed to demonstrate that the FMCSA's Order does not apply short haul drivers. *See, e.g., Robinson v. Chefs' Warehouse, Inc.*, 2019 WL 4278926 (N.D. Cal. Sept. 10, 2019) ("Plaintiffs have

---

[8] Plaintiff moved for partial summary judgment solely on the grounds that he qualified as an employee under the ABC test and the ABC test applied to all of Plaintiff's claims. Plaintiff did not move on the alternative grounds or argue that if the Court concluded that the *Borello* test applied to any of Plaintiff's claims, Plaintiff would also qualify as an employee under that test. Therefore, the Court does not address that issue.

not shown, however, that the Order excludes short haul drivers").

In addition, Plaintiff argues that the FMCSA's December 28, 2018 preemption determination cannot apply retroactively because it would deprive commercial drivers of their vested rights in their California meal and rest break claims for the time period preceding the December 28, 2018 preemption determination. Defendants argue that, after the FMCSA's preemption determination, the Court does not have the power to enforce California's meal and rest break rules, regardless of when the underlying conduct occurred. Indeed, the majority of district courts that have considered this issue have concluded that, after the FMCSA issued its December 28, 2018 preemption determination, a court may not enforce California's meal and rest break rules as to property-carrying commercial drivers, regardless of when the underlying conduct occurred. See Ayala v. U.S. XPress Enterprises, Inc., 2019 WL 1986760, at *3 (C.D. Cal. May 2, 2019); Robinson v. Chefs' Warehouse, Inc., 2019 WL 4278926, at *4 (N.D. Cal. Sept. 10, 2019); Connell v. Heartland Express, Inc., 2020 WL 813022, at *3 (C.D. Cal. Feb. 6, 2020); Sales v. United Rd. Servs., Inc., 2020 WL 4035072, at *3 (N.D. Cal. July 17, 2020); Pavloff v. Cardinal Logistics Mgmt. Corp., 2020 WL 6828902, at *5 (C.D. Cal. Oct. 2, 2020); Valiente v. Swift Transportation Co. of Arizona, LLC, 2021 WL 1799808, at *2 (C.D. Cal. Apr. 5, 2021); Patton v. Midwest Construction Services, Inc., 2021 WL 2982277 (C.D. Cal. June 11, 2021). The Court agrees with the reasoning of the Ayala line of cases and concludes that, while some of the conduct giving rise to Plaintiff's meal and rest break claims occurred prior to the issuance of the FMCSA December 28, 2018 preemption determination, "[t]he Court currently has no authority to enforce the regulations" under which Plaintiff brings his claims. Ayala, 2019 WL 1986760, at *3. "Therefore, the issue of retroactive effect is irrelevant." Id. The Court concludes that it lacks the power to grant Plaintiff any relief as to his meal and rest break claims.

Accordingly, the Court concludes that although Plaintiff should be classified as an employee for these claims, Defendants are entitled to summary judgment on Plaintiff's first cause of action alleging failure to provide required meal periods and second cause of action alleging failure to provide required rest periods.[9]

## 2.     Plaintiff's Failure to Pay Minimum Wage Claim Fails

In the third cause of action, Plaintiff alleges that Defendants failed to pay him minimum wages because certain tasks he performed pursuant to the Agreements were uncompensated. Specifically, Plaintiff argues that he was not compensated for "[m]eetings, tank washes[, and] quarterly inspections."

It is undisputed that the "compensation owed employees is a matter of determined primarily by contract" (Oman v. Delta Air Lines, Inc., 9 Cal. 5th 762, 782 (2020)), and that the terms of Plaintiff's compensation during the relevant time period are governed by the Agreements. Those Agreements specifically provide that the compensation set forth in Schedule A compensates

---

[9] Because the Court has concluded that Plaintiff's meal and rest break claims are preempted under the FMCSA's Order, it need not consider whether Plaintiff's meal and rest break claims are also preempted under the Hazmat Safety Administration's September 21, 2018 preemption determiniation.

Plaintiff for "Services," which are defined to include "transport, load, unload, and perform other transportation-related services."  In addition, Schedule A specifically provides that Plaintiff's compensation is calculated "for carriage of loads tendered by" Defendants and Plaintiff earned a percentage of the adjusted gross revenue for each load tendered to him.  Plaintiff concedes that he was paid for all "tasks necessary for the carriage of load[s]" that he transported for Defendants.  Moreover, Plaintiff fails to provide any evidence that he was required to perform any tasks that he was not compensated for during the relevant period not barred by the statute of limitations.  For example, although Plaintiff states in his declaration that he attended meetings at the Embassy Suites "whenever they were held," Defendants demonstrated that there was only one such meeting held during the relevant period within the statute of limitations and that Plaintiff did not attend that meeting.  Indeed, Plaintiff ultimately conceded that he does not remember attending that particular meeting.  Furthermore, although Plaintiff states in conclusory fashion in his declaration that he was "required to have Quality's tank washed several times over the years," he fails to provide any evidence that any of those tanks were washed during the relevant period.  In addition, the Court concludes that tank washes are a "transportation-related service" that is "necessary for carriage of the load."  Because Plaintiff was transporting liquid hazardous chemicals, washing the tank prior to hauling a load is not merely cosmetic, but a safety issue.  Similarly, the Court concludes that the quarterly and annual inspections performed by Plaintiff would also qualify as "transportation-related services" for which he was compensated.  Indeed, Plaintiff testified at his deposition that he was being paid for his services as a "Class A driver," which included loading, unloading, fueling, completing pre- and post-trip inspections, paperwork, and waiting at shippers and receivers.  Thus, it is clear that Plaintiff understood that his compensation pursuant to the Agreement was for "transportation-related services," which included tasks beyond merely driving his truck from one location to another.

Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's third cause of action alleging failure to pay minimum wage.

### 3. Plaintiff's Expense Indemnification and Unlawful Wage Deduction Claims Fail

In the sixth cause of action, Plaintiff alleges that Defendants failed to indemnify him for his business expenses, and in the seventh cause of action, Plaintiff alleges that Defendants took unlawful deductions from his wages.  Specifically, Plaintiff alleges that California Labor Code § 2802 requires Defendants to reimburse all business related expenses and that the deductions he authorized in the Agreements for costs associated with his truck – such as maintenance, fuel, tires, permits and licenses, taxes and insurance – were taken from his compensation in violation of California law.[10]

The Truth-in-Leasing ("TIL") regulations govern "[t]he leasing of equipment with which to perform transportation regulated by the Secretary [of Transportation]."  49 C.F.R. § 376.1.  The regulations mandate that when "[an] authorized carrier . . . perform[s] authorized transportation in equipment it does not own," "[t]here shall be a written lease granting the use of the equipment."  49

---

[10] Plaintiff does not dispute that the Agreements provided that those costs would be deducted from his compensation, only that those deductions violated California law.

C.F.R. § 376.11. In addition, Section 376.12 sets out the requirements of a compliant written lease:

> The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1). With respect to operational costs, "[t]he lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items." 49 C.F.R. § 376.12(e). Although the lessee is required to obtain certain types of insurance for its operations (49 C.F.R. § 376.12(j)(1)), the regulations leave to the parties to negotiate the responsibility for other types of insurance. Moreover, the regulations permit the lessee to make deductions from the lessor's compensation for cargo or property damage:

> The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements. The lease shall further specify that the authorized carrier must provide the lessor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to the lessor. The written explanation and itemization must be delivered to the lessor before any deductions are made.

49 C.F.R. § 376.12(j)(3). Furthermore, the regulations permit the carrier to hold funds in escrow or require a performance bond of the lessor and to make specified deductions. *See* 49 C.F.R. § 376.12(k).

  In this case, as Plaintiff concedes, the Agreements authorized Defendants to make the contested deductions, consistent with the TIL regulations. Instead, Plaintiff argues that any deductions to his compensation violate the California Labor Code. However, because the TIL regulations expressly provide the parties the freedom to contract to allocate certain operational costs to contractors and to deduct those costs from the contractors' compensation, the Court concludes that Plaintiff's claim for unreimbursed business expenses under California Labor Code § 2802 and allegedly illegal deductions under California Labor Code § 221 are preempted.[11] *See, e.g., Valadez v. CSX Intermodal Terminals, Inc.*, 2017 WL 1416883, at *11 (N.D. Cal. Apr. 10, 2017 (holding that the plaintiffs' "claims are also preempted if the California Labor Code prohibits activities that the TIL Regulations permit"); *Remington v. J.B. Hunt Transp., Inc.*, 2016 WL 4975194, at *4 (D. Mass. Sept. 16, 2016) (granting motion to dismiss claims of owner-operators

---

[11] In addition, Defendants are entitled to summary judgment on Plaintiff's illegal deduction claim under Section 221 because there is no private right of action for that claim. *See Robles v. Schneider Nat'l Carriers, Inc.*, 2017 WL 8231051, *9 (C.D. Cal. Feb. 10, 2017) ("The Court finds that the weight of authority – together with the clear language of the statute – supports Defendant's argument. Unlike other sections of the Labor Code, which expressly allow employees to file suit to recover wages, there is nothing to indicate that the legislature intended to create a private right of action to remedy violations of sections 221").

seeking reimbursement for expenses under state law due to having been misclassified as contractors because "[w]hat is explicitly permitted by federal regulations cannot be forbidden by state law"); *cf. Rodriguez v. RWA Trucking Co., Inc.*, 238 Cal. App. 4th 1375, 1393 (2013), *as modified* (Sept. 20, 2013) (holding that preemption barred enforcement of California insurance laws that prohibited chargebacks to owner-operators for insurance premiums because "49 C.F.R. section 376.12 permits motor carriers to charge back liability insurance costs to its drivers"). For example, Plaintiff is seeking reimbursement for the expenses related to acquiring and maintaining his truck, which are preempted vehicle acquisition and maintenance expenses under the TIL Regulations.[12] *See* 49 C.F.R. § 376.12(c)(1) ("The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease."); *Id.* at § 376.12(d) ("The compensation stated on the lease . . . may apply to equipment and driver's services either separately or as a combined amount"). Similarly, Plaintiff is seeking reimbursement for fuel and maintenance costs, which are preempted by 49 C.F.R. § 376.12(d). *Id.* at § 376.12(e) ("The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portion of such items."). In addition, the TIL Regulations preempt Plaintiff's claims to the extent they seek reimbursement of insurance costs. *See* 49 C.F.R. § 376.12(j)(l) ("The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage . . . If the authorized carrier will make a charge back to the [contractor] for any of this insurance, the lease shall specify the amount which will be charged-back to the [contractor]"). Finally, Plaintiff's claims are preempted to the extent it seeks reimbursement of cargo and property damage payments. *See* 49 C.F.R. § 376.12(j)(3) (permitting agreements between motor carriers and owner-operators to specify the conditions under which deductions for cargo and property damages may be made from settlement payments).

Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's sixth cause of action alleging failure to indemnify Plaintiff for his business expenses and seventh cause of action for unlawful deductions from his wages.

### 4. Plaintiff's Waiting Time Penalties Claim Fails

In his fourth cause of action, Plaintiff alleges a claim for waiting time penalties related to Defendants' failure to pay Plaintiff all earned and unpaid wages when he was terminated.

---

[12] In addition, under California law, "employers in the pick up and delivery industry in California can require as a condition of employment that their drivers, at their own expense, purchase or lease a truck [that meets] the employer's specifications." *Estrada v. FedEx Ground Packaging Sys., Inc.*, 154 Cal. App. 4th 1, 21-24 (2007) (analyzing a number of interpretive bulletins released by the California Department of Industrial Relations). As a result, the Court concludes that Plaintiff may not recover the costs he incurred to lease the truck that he used to provide services to Defendants. *See, e.g., Villalpando v. Exel Direct Inc.*, 2015 WL 5179486, at *38 (N.D. Cal. Sept. 3, 2015) (holding that "the Estrada decision provides strong support for [the employer's] contention that class members are not entitled to be reimbursed for their truck lease payments."). Therefore, to the extent Plaintiff's claims under Sections 221 and 2802 seek recovery of those costs, Defendants are entitled to summary judgment on those claims for this additional reason.

California Labor Code § 203 provides for the assessment of a penalty against the employer when there is a "willful" failure to pay "any wages" due the employee at conclusion of the employment relationship.  Pursuant to Section 203, "willful" means that an employer intentionally failed or refused to perform an act which was required to be done.  *Troster v. Starbucks Corporation*, 387 F. Supp. 3d 1019, 1030 (S.D. Cal. 2019) (holding that even though the employer lost on the merits of its defense, Section 203 penalties were not owed where the employer asserted in good faith that it did not owe wages under de minimis doctrine).

In this case, Plaintiff's waiting time penalties claim is entirely predicated on his claims that Defendants failed to pay him meal and rest break premiums, failed to pay him the minimum wage, failed to pay his business expenses, and took unlawful deductions from his pay.  However, as discussed above, Defendants are entitled to summary judgment on those claims and, as a result, Defendants are also entitled to summary judgment on Plaintiff's derivative waiting time penalty claim.

Accordingly, the Court concludes that Defendants entitled to summary judgment on Plaintiff's fourth cause of action alleging waiting time penalties.

## IV.     Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.  The Court concludes that Plaintiff should be classified as an employee, not an independent contractor, for the first, second, and third causes of action (and related portions of the eighth cause of action) alleged in the FAC.  Plaintiff's Motion is denied with respect to Plaintiff's fourth, fifth, sixth, and seventh causes of action (and related portions of the eighth cause of action).  Defendants' Motion is **GRANTED** and Defendants are entitled to judgment on Plaintiff's first cause of action alleging failure to provide required meal periods, second cause of action alleging failure to provide required rest periods, third cause of action alleging failure to pay minimum wages, fourth cause of action alleging failure to pay all wages due upon termination, sixth cause of action alleging failure to indemnify for necessary expenditures incurred in discharge of duties, and seventh cause of action alleging unlawful wage deductions.

IT IS SO ORDERED.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON SALTER, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> QUALITY CARRIERS, INC., an Illinois Corporation; QUALITY DISTRIBUTION, INC., a Florida Corporation, <br><br> Defendants. | Case No.: 2:20-cv-00479-JFW-JPRx <br><br><br> **FINAL JUDGMENT** |

The Court hereby enters final judgment in Defendants' favor and against Plaintiff on all Causes of Action in Plaintiff's First Amended Complaint. This action is dismissed with prejudice, and Plaintiff shall take nothing by way of his First Amended Complaint.

IT IS SO ORDERED.

DATED: November 9, 2021

_____
Hon. John F. Walter
United States District Judge

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

| |
|---|
| CLAYTON SALTER |

Name(s) of counsel (if any):

| |
|---|
| Taras Kick (State Bar No. 143379), Roy K. Suh (State Bar No. 283988), Jeffrey C. Bils (State Bar No. 301629)<br>THE KICK LAW FIRM, APC |

Address: 815 Moraga Drive, Los Angeles, CA 90049

Telephone number(s): (310) 395-2966

Email(s): taras@kicklawfirm.com, roy@kicklawfirm.com, jeff@kicklawfirm.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

| |
|---|
| Quality Carriers, Inc. and Quality Distribution, Inc. |

Name(s) of counsel (if any):

| |
|---|
| Christopher C. McNatt, Jr. (SBN 174559)<br>SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C. |

Address: 2 North Lake Avenue, Suite 560 Pasadena, CA 91101

Telephone number(s): (626) 795-4700

Email(s): cmcnatt@scopelitis.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                       1                              *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):
Matthew W.H. Wessler, admitted Pro Hac Vice, Jennifer D. Bennett (State Bar Number 296726), GUPTA WESSLER PLLC

Address: 1900 L Street, Suite 312 Washington, DC. 20036

Telephone number(s): (617) 286-2392

Email(s): matt@guptawessler.com, jennifer@guptawessler.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ○ Yes   ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):
Christopher J. Eckhart (SBN 331414), E. Ashley Paynter (SBN 333428) SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

Address: 10 West Market Street, Suite 1400 Indianapolis, IN 46204

Telephone number(s): (317) 637-1777

Email(s): ceckhart@scopelitis.com, apaynter@scopelitis.com

Name(s) of party/parties:

Name(s) of counsel (if any):
Jared S. Kramer, admitted Pro Hac Vice, Andrew R. Brehm, admitted Pro Hac SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.

Address: 30 West Monroe Street, Suite 1600 Chicago, IL 60603

Telephone number(s): (312) 255-7200

Email(s): jskramer@scopelitis.com, abrehm@scopelitis.com

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                             *2*                              New 12/01/2018